**In the Matter of W. K.**

**No. 7686.**

District of Columbia Court of Appeals.

Argued Jan. 29, 1974.

Decided July 30, 1974.

Rehearing and Rehearing en Banc
Denied Oct. 1, 1974.

Jeffrey Freund, Washington, D.C., appointed by this court, for appellant. Karen E. Moore, Washington, D.C., also appointed by this court, entered an appearance for appellant.

Leo N. Gorman, Asst. Corp. Counsel, Washington, D.C., with whom C. Francis Murphy, Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D.C., were on the brief, for appellee.

Before REILLY, Chief Judge, and KELLY and YEAGLEY, Associate Judges.

REILLY, Chief Judge:

Appellant was found guilty in the Juvenile Branch of the Family Division of assault with a dangerous weapon, robbery by force and violence, and carrying a pistol without a license in violation of D.C.Code 1973, §§ 22–502, 22–2901, and 22–3204, respectively. On this appeal he assigns as error the trial court's (1) denial of his pretrial motion to suppress the in-court identifications of two government witnesses; (2) granting of a government motion to amend the petition; and (3) denial of appellant's motion for judgment of acquittal on the charge of carrying a pistol without a license. He also contends that the evidence was insufficient to sustain the adverse findings of the trial court.

On the evening of May 17, 1973 at 7:55 p. m., three young men robbed a Chinese restaurant which they had visited an hour before. At that time, they had inquired about the operation of the public telephone, surveyed the scene, and departed abruptly. When they reappeared, two of them entered the kitchen, where the cash register was located, while the third—the shortest and youngest looking—shouted, "Freeze", pointing a gun at the people in the dining area. Upon hearing shots fired in the kitchen, one of which wounded a cook on the hand, the assistant manager of the restaurant, Kien Chan, went back there and opened the drawer of the cash register. The first robbers then took the money in the drawer (approximately $120) and headed for the street. As the third started to follow them out, he grabbed a handbag belonging to a customer, one Mrs. Leonard King, who was sitting at a table with her husband. She struggled with the robber until her husband directed her to let the bag go. The robber then hit her over the head with the bag and hastened out, firing several shots into the dining area as he left.

The next day, King and Mary Cornwell, a waitress employed by the restaurant, were shown a number of photographs by the police. They picked a photograph of appellant as being that of the third robber. Appellant was arrested less than a month later.

At trial, the government presented four eyewitnesses. Mrs. King tentatively identified appellant as the robber who had seized her handbag, but stated that she was not sure because she was frightened and upset when that person came to her table, and had been drinking cocktails earlier. Her husband testified that he had had a good look at the robber in question and was sure that appellant was the one. Chan testified that appellant looked like him, but that he was not a hundred percent sure. The waitress, however, when placed on the stand, said that appellant was not the boy who had pointed the gun at her, that she had chosen the wrong photograph at the display, and that although appellant had some facial features similar to those of the robber, his complexion was lighter.

Appellant did not take the stand, but called an alibi witness—his mother—and two character witnesses. His mother testified that appellant was at home at the time

of the robbery, but her testimony was impeached by an investigating officer who told the court about an inconsistent statement made by the witness, when interviewed by the police after her son's arrest.

Appellant's major contention on appeal is that the trial court erred in denying without a hearing his pretrial motion to suppress the potential in-court identifications by Chan and Mrs. King.

In advance of the trial, defense counsel had been informed that the government intended to call two eyewitnesses to the holdup, Chan and Mrs. King, for the purpose of identifying the defendant as the young gunman in the dining area. Neither witness had made any pretrial identification, either by photograph or otherwise. When court convened, counsel moved to suppress the expected testimony of these witnesses on the ground that any in-court identification would be tainted with suggestion, because the confrontation would occur when the accused would be seated at the defense counsel table, rather than among several individuals of similar physique in a police line-up.

Citing Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), for the proposition that the practice of exhibiting a suspect singly for purposes of obtaining an identification was unfair, counsel argued that inasmuch as the witnesses could easily infer which of the persons in the courtroom was the defendant, they would then jump to the conclusion that if there was enough evidence to bring him to trial, he must then be the same person they had seen in the restaurant. The trial court rejected this motion, ruling that the testimony of the witnesses could be received without a pretrial evidentiary hearing.

In our opinion, the ruling of the trial court was correct. It is true that where a defendant is being tried alone, an in-court identification by a witness who has never seen the defendant, or even a photograph of him, since the occurrence of the crime, is open to the suspicion of suggestiveness. But we know of no authority, and appellant has cited none, which holds that the innate weakness in such testimony is a ground for assailing its admissibility rather than its weight.

Thus far, the only decisions by the Supreme Court holding in-trial identifications inadmissible have been cases where the witness prior to trial had identified the suspect under circumstances deemed inherently suggestive, *e. g.*, a line-up from which counsel was excluded, a confrontation of a single suspect in a cell or police station, verbal guidance by police in displaying photographs, and the like. *See* Neil v. Biggers, 409 U.S. 188, 198, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); Simmons v. United States, 390 U.S. 377, 383–384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1967), and the trilogy of June 12, 1967—United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199.

Where there has been no pretrial identification, courts have apparently taken it for granted that an in-court identification stands on its own if the witness had an opportunity to see the culprit at the scene of the crime even though he has not been called upon to recognize the suspect until the trial. Somewhat paradoxically, the reasons courts have given for receiving such testimony (except for the fact that defense counsel is present and can cross-examine) is that juries are inclined to be skeptical of courtroom identifications.

Thus in accepting the rule—upon which there was a conflict of judicial authority [1] —permitting the prosecution to show that an identifying witness, not as yet impeached, had also identified the particular defendant on pretrial occasions, Judge Au-

---

1. Some courts deemed such testimony hearsay, or, if brought out by questions to the witness himself, as nothing more than a prior consistent statement.

gustus N. Hand of the United States Court of Appeals for the Second Circuit, observed:

> Identification of the accused is frequently dubious and when made in open court sometimes has little testimonial value so that corroboration would seem to be properly allowed. United States v. Forzano, 190 F.2d 687, 689 (2d Cir. 1951).

In a thoughtful opinion approving this doctrine, Judge McGowan of this circuit made this explanation:

> . . . [J]uries in criminal cases . . . are entitled to know more of the circumstances which culminate in a courtroom identification—an event which, standing alone, often means very little to a conscientious and intelligent juror, who routinely expects the witnesses to identify the defendant in court and who may not attach great weight to such an identification in the absence of corroboration. . . . Clemons v. United States, 133 U.S.App.D.C. 27, 40, 408 F.2d 1230, 1243 (1968).

■ Nor was the trial court required to hold a hearing on appellant's motion to suppress. The primary reason for holding a separate hearing is to make the determination of admissibility outside the presence of the jury. *See* Clemons v. United States, *supra*, 133 U.S.App.D.C. at 34, 408 F.2d at 1237. Since this was a nonjury trial,[2] there was no need for this two-step process.

Appellant also argues that the trial court erred in granting the government's motion to amend count (5) of the petition by substituting "Mr. Kien Chan" for "Mrs. Mary Cornwell." Super.Ct.Juv.R. 7(e) reads as follows:

> The [Juvenile] Division may permit a petition to be amended at any time prior to the conclusion of a factfinding hearing if no additional or different offense

is charged and if substantial rights of the respondent are not prejudiced. The Division shall grant the Corporation Counsel, the child, and his parent, guardian or custodian notice of the amendment and, upon request of any party for good cause shown, a reasonable time to prepare.

■ It was clearly within the trial court's discretion to permit the amendment. In re J. R. G., D.C.App., 305 A.2d 529 (1973). A change in the name of the victim is not tantamount to charging a new offense. Nor were substantial rights of appellant prejudiced, as his defense was an alibi. Significantly, appellant did not ask for a continuance to allow time to prepare any new issue raised by such amendment.

■ Appellant next contends that it was error for the trial court to deny his motion for judgment of acquittal on all counts at the close of the government's case on the ground that the evidence was so weak and conflicting that it could not support the verdict. The general rule is that a motion for judgment of acquittal should be granted only if it is determined from the evidence that "giving full play to the right of the [trier of fact] to determine credibility, weigh the evidence, and draw justifiable inferences of fact," a reasonable mind could not "fairly conclude guilt beyond a reasonable doubt." Curley v. United States, 81 U.S.App.D.C. 389, 392, 160 F.2d 229, 232, cert. denied, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947); *see* United States v. Bush, 135 U.S.App.D. C. 67, 416 F.2d 823 (1969). In this case, the positive identification by one witness and the somewhat tentative identifications by Mrs. King and Chan were clearly a sufficient basis for the court's ultimate finding. All three had a good opportunity to observe the robber. It was within the province of the court to disbelieve the testimony of the waitress, who had chosen appellant's photograph from a display the day

2. D.C.Code 1973, § 16–2316.

after the robbery. Therefore, the question of identification was for the trier of fact.[3] Durham v. United States, D.C.App., 237 A.2d 830 (1968); *cf.* Adams v. United States, D.C.App., 302 A.2d 232, 235 (1973).

■ Upon reviewing the entire record, we perceive only one error—the denial of the motion for judgment of acquittal on the charge of carrying a pistol without a license. The government introduced no evidence that appellant lacked a valid license to carry a pistol—an essential element of the offense. Bussie v. United States, D.C.Mun.App., 81 A.2d 247 (1951); Brown v. United States, D.C.Mun.App., 66 A.2d 491 (1949). Judicial notice could not cure this defect, for neither the D.C.Code nor the Police Regulations of the District of Columbia in force at the time prohibited the issuance of a license to carry a pistol to a minor. *See* D.C.Code 1973, § 22–3206; D.C.Police Regs., Art. 52, § 1(b). *Compare with* D.C.Police Regs., Art. 52, § 5(c)(1) (license to carry a rifle or shotgun).[4]

Accordingly, the finding of guilty on the charge of carrying a pistol without a license must be reversed, and the case remanded for the appropriate record entries. As appellant's commitment to the Social Rehabilitation Administration was suspended, we leave it to the discretion of the trial court as to whether to have a further disposition hearing.

Affirmed in part; reversed in part.

---

3. Appellant's reliance on Bush v. United States, *supra*, is misplaced. That case was a murder prosecution where the record contained strong, uncontradicted evidence of self-defense and, hence, is easily distinguishable.

4. In contrast, the newly proposed "Police Regulations for the Issuance of a License to Carry a Concealed Weapon" expressly prohibit youths under the age of 21 from obtaining such a license. *See* 20 D.C.Reg. 1221 (June 3, 1974).