Charles REAVIS, Appellant,

v.

UNITED STATES, Appellee.

No. 10214.

District of Columbia Court of Appeals.

Argued May 4, 1978.

Decided Nov. 24, 1978.

---

Ladd B. Leavens, Public Defender Service, Washington, D. C., for appellant.

Reggie B. Walton, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Michael W. Farrell, and Henry F. Schuelke III, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and KERN and FERREN, Associate Judges.

NEWMAN, Chief Judge:

Appellant seeks reversal of his conviction for first-degree felony murder, D.C.Code 1973, § 22–2401; two counts of attempted armed robbery, D.C.Code 1973, §§ 22–2902, 3202; carrying a pistol without a license, D.C.Code 1973, § 22–3204; and violation of the Bail Reform Act, D.C.Code 1973, § 23–1327(a)(1).[1] He urges that the trial judge erred (1) in failing to declare a mistrial sua sponte when a prosecution witness who had failed to identify appellant previously, identified him spontaneously at trial; (2) in denying defense counsel's motion to discover the substance of appellant's inculpatory statements to Sirus Levy; and (3) in permitting the government to intro-

1. At trial, appellant was represented by co-counsel (not appellate counsel) from the Public Defender Service.

duce prejudicial evidence that appellant used an alias. Only the first of these issues merits extended discussion.[2] We affirm.

In the fall of 1974, Frank M. Stevenson, Henry A. Brownfield, Samuel Littlefield, and a number of other officials of the United Mine Workers who were in Washington, D.C., to negotiate a union contract, resided on the sixth floor of the Holiday Inn at 1501 Rhode Island Avenue, N.W. On the evening of November 15, Stevenson and Brownfield were talking in Brownfield's room, the door partly ajar. A man with a gun entered the room and ordered the two to lie down on the floor and surrender their wallets. As they were doing so, Littlefield knocked on the door. The gunman pulled it open and Littlefield fled. The gunman pursued him and shot him twice in the head. Witnesses saw the gunman in the sixth floor hallway just after the shooting and as he left the hotel.

Later the same evening several policemen stopped appellant and Sirus Levy near the hotel. The police discovered a pistol behind a nearby wall and arrested them for carrying a deadly weapon. At that time the police did not suspect that appellant or the pistol were connected with the Littlefield murder. While they were under arrest, appellant asked Levy to remove a hotel key from his pocket. (Because he was handcuffed, appellant was unable to remove it himself.) Later still he admitted to Levy that he had shot Littlefield. When he was booked on the weapons charge, appellant gave the name Charles Reavis. His real name is Ellsworth Smith. The key was to a room in a hotel within two blocks of the shooting where appellant was registered in the name of Thurman McCollan.

Both photographic array and lineup identification procedures were utilized. James B. Chisholm, a witness who had seen the gunman flee the hotel, identified appellant from the photographic array and from the lineup. So did Stevenson. Although Brownfield viewed two photographic arrays that contained pictures of appellant and a lineup in which appellant stood, he was unable to make a pretrial identification of appellant.

At trial, to the apparent surprise of all counsel Brownfield identified appellant as the gunman in the following exchange:

Q. And what is the next thing that occurred, as you recall?

A. Well, this man walked in the room as I was talking to the office.

Q. What man?

A. That man sitting over there.

Counsel for appellant did not object either at the time of that colloquy or thereafter and did not request a mistrial. They did, however, conduct a rigorous and thorough cross-examination on Brownfield's previous failures to identify appellant.

In support of his contention that the trial court was obligated sua sponte to declare a mistrial based on Brownfield's in-court identification, appellant argues that this identification was so impermissibly suggestive and demonstrably unreliable "as to jeopardize the very fairness and integrity of the trial." *Watts v. United States*, D.C. App., 362 A.2d 706, 709 (1976) (en banc). Appellant argues that such decisions of the Supreme Court beginning with *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), including *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401

2. The inculpatory statement which appellant made to Sirus Levy was not discoverable under Super.Ct.Cr.R. 16(a) as it existed at the time of this trial since Levy was not a law enforcement officer or agent. *Heiligh v. United States*, D.C. App., 379 A.2d 689 (1977); *Robinson v. United States*, D.C.App., 361 A.2d 199 (1976).

While our decisions have sounded a clear note of caution on the introduction of evidence of an "alias" used by a defendant, *see, e. g.,*

*Johnson v. United States*, D.C.App., 389 A.2d 1353 (1978), there are issues, such as consciousness of guilt, upon which a trial court, in the exercise of its discretion, may properly determine that the probative value of the "alias" evidence outweighs the prejudicial effects thereof. *Jordan v. United States*, 324 F.2d 178 (5th Cir. 1963). On this record, we cannot say the trial court's ruling on this issue constituted an abuse of discretion mandating reversal.

(1972); and ending with *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), mandated the exclusion of the challenged identification on due process grounds.

In *Stovall v. Denno, supra,* the Supreme Court said that an in-court identification of a defendant might constitute a denial of due process if the pretrial identification procedures were "unnecessarily suggestive and conducive to irreparable mistaken identification." *Id.* 388 U.S. at 301–02, 87 S.Ct. at 1972. The Court has reaffirmed this principle. *See, e. g., Simmons v. United States, supra,* 390 U.S. at 384, 88 S.Ct. 967 (in which the Court used the terminology "impermissibly suggestive"). Most recently in reaffirming the *Stovall* principle, the Court has held that the taint of improper pretrial identification procedures could be obviated by showing that the witness' original observation of the defendant was reliable. *Manson v. Brathwaite, supra,* 97 S.Ct. at 2253. Holding that reliability, not deterrence of improper police procedures, was the "linchpin in determining the admissibility of identification testimony," *id.,* the Court stated that the indicia of reliability included the opportunity to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. *Id.; Neil v. Biggers, supra,* 409 U.S. at 199–200, 93 S.Ct. 375. "Against these factors is to be weighed the corrupting effect of the suggestive identification itself." *Manson v. Brathwaite, supra,* 97 S.Ct. at 2253.

The factor common to all the cases on which appellant relies—and the factor which makes that reliance misplaced—is a prior out-of-court identification which was challenged as unduly suggestive. Such did not exist in this case. Simply stated, appellant would have us hold that by its decision in *Manson v. Brathwaite, supra,* the Supreme Court has constitutionalized, under the due process clause, the law of evidence as it relates to the probative value of certain in-court identifications. We do not so read the cases from *Stovall* to *Manson* and have rejected at least implicitly, the same contentions. *See Brown v. United States,* D.C.App., 349 A.2d 467 (1975) (pretrial suppression of identification evidence improper where based solely on finding that the evidence was "too weak"). *See also Brown v. United States,* D.C.App., 327 A.2d 539 (1974); *In re W.K.,* D.C.App., 323 A.2d 442 (1974). Thus we conclude that even if objection had been made, no constitutional error would have resulted from admitting this testimony.

■ We next turn to the issue of whether, under the law of evidence, the in-court identification by Brownfield would have been admissible if objection had been made. Relevance, and the concepts it embodies, determines initially whether a proffered item of evidence will be admissible. *Bogorad v. Kosberg,* D.C.Mun.App., 81 A.2d 342, 343 (1951). *See also* 1 Wigmore, Evidence §§ 11 & 12 (3d ed. 1940). First, the evidence, to be relevant, must relate logically to the fact it is offered to prove. *Fowel v. Wood,* D.C.Mun.App., 62 A.2d 636, 637 (1948). This logical relationship is described as a "tendency of evidence to establish a proposition." McCormick on Evidence § 185 at 435 (2d ed. 1972). Second, the fact sought to be established by the evidence must be material, which is to say that the party must establish that fact as a condition to prevailing on the merits of his case. McCormick, *supra* at 434; *Ahrens v. Broyhill,* D.C.Mun.App., 117 A.2d 452, 455–56 (1955). Finally, the evidence must be adequately probative of the fact it tends to establish. This does not mean that the evidence, standing alone, must be sufficient for the court to permit the case to go to a jury, McCormick, *supra,* at 436, but it must tend "to make the existence or nonexistence of a fact more or less probable than would be the case without that evidence." *Punch v. United States,* D.C.App., 377 A.2d 1353, 1358 (1977); *Mutual Life Ins. Co. of New York v. Hillmon,* 145 U.S. 285, 296, 12 S.Ct. 909, 36 L.Ed. 706 (1892); McCormick, *supra* at 437. The trial court determines whether the proffered evidence is sufficiently rele-

vant to be admissible, *Fowel v. Wood, supra* at 637, and that determination is reviewable only for an abuse of discretion. *United States v. Carter,* 173 U.S.App.D.C. 54, 73, 522 F.2d 666, 685 (1975). *See also Hemsley v. United States,* D.C.App., 353 A.2d 14, 15–16 (1976).

■ Even if the proffered evidence is infirm the trial judge does not err by admitting it in the absence of a timely objection to its admissibility unless to admit it is plain error. *Watts v. United States, supra* at 708–09.

If the administration of the exclusionary rules is to be fair and workable that judge must be informed promptly of contentions that evidence should be rejected and the reasons therefor. The initiative is placed on the party, not on the judge. The general approach, accordingly, is that a failure to object to an offer of evidence at the time of the offer is made, assigning the grounds, is a waiver upon appeal of any grounds of complaint against its admission. [McCormick, *supra,* § 52 at 113.]

A number of cases in this jurisdiction have taken this very position. *See, e. g., Miles v. United States,* D.C.App., 374 A.2d 278, 282–83 (1977) (prior bad acts); *Wilson v. United States,* D.C.App., 357 A.2d 861, 864 (1976) (hearsay); *Conyers v. United States,* D.C. App., 237 A.2d 838, 840 (1968) (prior convictions). The decision not to inquire into the propriety of unobjected-to evidence on appeal often is bolstered by the possibility that the failure to make a timely objection was a calculated tactical risk taken by the party.

■ In the case before us, the record suggests a deliberate tactical choice by counsel. Rather than object to Brown-

field's impromptu in-court identification of appellant, they attempted to discredit Brownfield's identification so thoroughly that it might cloud all the other identifications made in the case. In light of the fact that appellant's counsel did not make a timely objection at trial to the admission of the evidence to which appellant objects on appeal, the plain error standard of *Watts* is applicable. We conclude that accepting Brownfield's identification testimony into evidence was not plain error, if error at all.[3]

*Affirmed.*

---

**3.** To sua sponte declare a mistrial without danger of a double jeopardy bar to retrial, the trial court would have to find a manifest necessity for so doing. *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1828); *Arizona v. Washington,* 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). This would have required the trial court to determine that counsel's failure to object to the admission of the identification evidence came close to depriving the defendant of effective assistance of counsel in violation of the Sixth Amendment. Thus, a burden was placed on appellate counsel, in claiming the right to a sua sponte mistrial, of evaluating the possible ineffectiveness of trial counsel. As we have said previously, when, on appeal, a good faith, legitimate issue of ineffective assistance of counsel exists, trial counsel should move to withdraw as counsel on appeal. *See, e. g., Harling v. United States,* D.C.App., 372 A.2d 1011, 1013 (1977); *Shelton v. United States,* D.C.App., 323 A.2d 717, 718 (1974).