**UNITED STATES, Appellant,**

v.

**Michael S. BRANNON, Appellee.**

No. 13462.

District of Columbia Court of Appeals.

Argued Nov. 14, 1978.
Decided Aug. 9, 1979.

Charles L. Hall, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Reggie B. Walton, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellant.

Alan P. Bayles, Washington, D. C., for appellee.

Before GALLAGHER, NEBEKER and FERREN, Associate Judges.

NEBEKER, Associate Judge:

Pursuant to D.C.Code 1973, § 23–104(a)(1), the United States appeals from an order suppressing an in-court identification by the robbery and armed assault victim. We reverse and remand for further proceedings.

I

The woman, who was to become the victim, first observed Brannon, together with another man, from her car before she entered a furniture store. Following her shopping there and at the grocery store, she again observed Brannon, who was in front of the grocery store. After returning to her car, she picked up her groceries at the front of the store, where she had momentarily left them, and again observed him. Brannon thereupon ran twelve to fifteen feet to the victim's car, pointed a gun at her, ordered and then jerked her from the car. He attempted unsuccessfully to start the car and then got out and removed her handbag from the car. He admonished the victim to avoid "[getting] him into trouble" and fled. In fleeing, the appellant ran about ten feet, turned and looked at the victim, and then continued on his way. The area of the encounter was well lit; the victim's opportunity to observe her assailant was excellent. Indeed she was able to give a very detailed description, her ability to do so being derived from her former vocation as a fashion writer, which fostered a habit for observing clothing details. She gave a description to the police when they arrived on the scene, and the police broadcasted a summary of that description over the police radio. About ten minutes later, two officers apprehended Brannon a few blocks from the grocery store. At that time, he "appeared to be tired and sweating, and he had an unkept bush hair style, with pieces of grass or bushes and leaves through his hair." Between twenty and forty-five minutes following the robbery, the apprehending officers brought Brannon to the grocery store, where the victim identified him as the thief.

After indictment, the accused moved to suppress the on-scene identification and any in-court identifications, because the showup was "so unnecessarily suggestive as to give rise to a substantial likelihood of irreparable misidentification." About thirty minutes before the suppression hearing, the prosecutor showed the victim a single photograph of the appellee and asked her if she had ever seen the person depicted. She responded that it "looks like the man." Following the photo identification, the victim saw the appellee sitting alone in the hallway of the courthouse and immediately recognized him as her assailant. When asked at the suppression hearing whether her hallway recognition was based on the photograph or whether it was based on the

showup, she stated that she did not know. When asked if she would have recognized the appellee in the hallway absent her having seen the photo, her response was the same: "I don't know." The court refused to suppress the showup identification, ruling that it was not unreliable or likely a misidentification. He did, however, suppress the in-court identification as constitutionally unreliable because the initial showup identification was equivocal as to the victim's ability to identify and because she was "very candid" in stating that viewing the single photograph may have influenced her ability to recognize Brannon in the hallway. We hold that the in-court identification should not have been suppressed.

## II

Identification testimony must surmount two hurdles to be admitted against a defendant in a criminal trial. The first obstacle is the constitutional rights to due process, see, e. g., Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 96 (1977); Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); and to counsel, see, e. g., United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); the second is the law of evidence, e. g., Sheffield v. United States, D.C.App., 397 A.2d 963 (1979); Reavis v. United States, D.C. App., 395 A.2d 75 (1978); In re W.K., D.C. App., 323 A.2d 442, 444 (1974) (weakness of testimony is ground for assailing its weight, but not its admissibility). This appeal presents no issue of the right to counsel and therefore the opinion is limited in its constitutional aspects to whether the appellee would be denied his right to due process under the Fifth Amendment if the in-court identification were permitted.

### A.

We hold, as a matter of law, that an in-court identification could not abridge Brannon's right to due process because the potential witness had initially identified the appellee at a constitutionally acceptable confrontation, despite the prosecution having later refreshed the witness' memory with a single photo prior to a hearing to suppress the showup and in-court identifications. Patterson v. United States, D.C. App., 384 A.2d 663 (1978), presented facts similar to Brannon's: a constitutionally acceptable in-person identification followed by single, "refresher" photo identifications (brought about by the prosecutor) followed by challenged in-court identifications. The court concluded in Patterson that "although the single-photo displays were unnecessarily suggestive, they were not conducive to irreparable misidentification" in derogation of Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), and Simmons v. United States, supra, 390 U.S. at 390, 88 S.Ct. 967 ("very substantial likelihood of irreparable misidentification"). Patterson v. United States, supra, 384 A.2d at 666. When the prosecutor showed the Patterson witness the "mug shot" photographs of the defendants, not only was the witness equivocal in the identification, but his primary statement was that the subjects of the photos did not resemble his assailants. Id. at 664-65. Nevertheless, the court concluded that

> [a]t worst, the "refresher" photos produced a misleadingly current, positive identification derived from a previously untainted one. Just as a procedure devoid of suggestion cannot yield the "primary evil" of misidentification, . . . a procedure that includes suggestive elements subsequent to an unequivocal, unsuggested identification does not pose an unconditional risk of misidentification— of trying and convicting the wrong person. [Id. at 667 (emphasis in original).]

In support of our ruling in Patterson, we quoted at length from United States v. Hines, 147 U.S.App.D.C. 249, 262-63, 455 F.2d 1317, 1330-31, cert. denied, 406 U.S. 975, 92 S.Ct. 2427, 32 L.Ed.2d 675 (1972).

As did the appellants in Hines, the appellee here cites Simmons as support of the exclusion of the testimony. As the circuit court correctly noted in Hines, Simmons was the Supreme Court's expression of concern over the circumstances of the initial government staged identification when the field of suspects is being narrowed. We

conclude that an identification at a refresher photographic session does not fall within the unconstitutional bounds established in *Simmons* because "[s]uch an identification is neither 'initial' nor is it likely to lead to a misidentification, since the witness has already identified the suspect in a constitutionally acceptable manner." *Id.* 147 U.S. App.D.C. at 263, 455 F.2d at 1331. The eyewitness here had, as had

> each of the eyewitnesses [in *Hines,*] already made identifications at a valid showup or lineup prior to viewing the photographs. These eyewitnesses had established their ability to identify the suspects; the viewing of the photographs merely served to refresh their memories of the men they had previously chosen. . . . Such review by means of photographs does not taint an in-court identification, but may affect its weight if the defense chooses to develop the matter by cross-examination. [*Id.*]

Brannon contends that the uncertainty of the victim's initial identification distinguishes his situation from those of *Patterson* and *Hines* and that the suggestiveness of the initial identification distinguishes it from that of *Patterson.* As to cases more closely attuned to the facts of his case, however, the appellee cites none to support his position. On the suggestiveness issue, the facts in *Hines* are much more similar to Brannon's than are those of *Patterson.* The initial identification by several of the *Hines'* witnesses was made as the defendant was twice paraded before the witnesses, who apparently heard each other make the identification. *Id.* 147 U.S.App.D.C. at 253, 455 F.2d at 1321. Brannon's showup was certainly no more suggestive than was Hines'. Because the suggestiveness in *Hines* did not require suppression of the in-court identification, we are unpersuaded that the degree of suggestiveness of the showup here compels suppression.

Turning to the appellee's claim that the uncertainty of the showup identification is reason to suppress the in-court identification, we note that neither *Hines* nor *Patterson* presented their respective courts with an opportunity to rule on the matter. In

*Hines,* the initial identification was immediate, *id.,* and in *Patterson* it was "unequivocal," 384 A.2d at 668, whereas here, Brannon claims it was uncertain. The victim had described her assailant as wearing a brown shirt and black shoes. Upon first observing Brannon from a distance, she expressed reservation as to whether he was her attacker because Brannon appeared to be wearing a yellow shirt and tennis shoes. However, when the victim had approached Brannon, she saw that he was actually wearing a brown shirt, which was fully unbuttoned to reveal a yellow undershirt, and was in stocking feet, because he had tied his black shoes to his belt. She then identified Brannon as her assailant. Thus, the appellee contends, she equivocated in her initial identification, and therefore the in-court identification, following a single-photo viewing, should be suppressed.

■ We recently held, however, that the uncertainty or equivocation of a pretrial identification is not a constitutional bar to the in-court identification. *E. g., Reavis v. United States, supra.* "Although [the witness in *Reavis* had] viewed two photographic arrays that contained pictures of appellant and a lineup in which appellant stood, he was unable to make a pretrial identification of appellant." *Id.* 395 A.2d at 77. At trial, however, the witness identified the appellant as the man who robbed him, "That man sitting over there." *Id.* at 77. This court concluded that in the face of a defense objection, "no constitutional error would have resulted from admitting this testimony." *Id.* at 78. In sum, the witness was so uncertain in the pretrial identification procedures that he was unable to identify the defendant, yet was properly allowed to make an in-court identification, despite the suggestiveness of an in-court identification situation. Under somewhat analogous facts in *In re W.K., supra,* 323 A.2d at 444, we stated:

> It is true that where a defendant is being tried alone, an in-court identification by a witness who has never seen the defendant, or even a photograph of him, since the occurrence of the crime, is open to the suspicion of suggestiveness. But we

930

know of no authority, and appellant has cited none, which holds that the innate weakness in such testimony is a ground for assailing its admissibility rather than its weight.

The witness in *Cureton v. United States,* D.C.App., 386 A.2d 278 (1978), failed to identify the defendant as his assailant at a suppression hearing, although he had earlier selected the defendant at a lineup. With regard to the lineup, we noted that there was "some doubt . . . that [the witness] *promptly and unequivocally* identified appellant." *Id.* at 281 n. 6 (emphasis in original). Despite the hesitancy at the lineup and the inability to identify the defendant when confronted by him at the suppression hearing two days prior to trial, "the trial court ruled that [the witness] would be permitted to attempt an in-court identification of appellant," *id.* at 282, and we affirmed that decision. It would be a marked departure from our recent line of decisions to rule here that the suggestiveness of, or the uncertainty or equivocation of the witness at an initial, constitutionally acceptable pretrial identification, is a due process bar to a potential in-court identification, prior to which a witness' memory has been refreshed. Consequently, we must rule that there is no constitutional reason for disallowing the in-court identification by Brannon's accuser. *See Cureton v. United States, supra* at 287 n. 22 (distinguishing *Manson v. Brathwaite, supra,* on basis that "in *Manson,* the suggestive presentation of a single photograph for identification occurred *before* the witness had made *any* identification of the accused") (emphasis in original).

## B.

Because the issue of whether the in-court identification will be barred by the rules of evidence will likely be met on remand, we will briefly review the law on the issue. In *Reavis,* this court enumerated the *rudiments* of the law of evidence as it relates to an in-court identification, stating that a "proffered item of evidence will be admissible" if it is relevant, material and probative of the fact for which it is offered

to establish, *supra* 395 A.2d at 78. When evidence is so weak or unreliable as to lack probative value, a timely objection to its use will be sustained. *E. g., Sheffield v. United States, supra,* 397 A.2d at 967. If the evidence presented by the government in its case in chief is so weak that a jury could not resolve the identity issue against the accused beyond a reasonable doubt, a timely motion for acquittal will be granted. *E. g., Brown v. United States,* D.C.App., 349 A.2d 467, 468 (1975). However, unless the evidence is wholly lacking in probative value, its weakness and reliability are factors to be considered by the fact finder in determining the weight to be accorded the testimony. *E. g., In re W.K., supra; see Manson v. Brathwaite, supra,* 432 U.S. at 116–17, 97 S.Ct. 2243. As the Supreme Court stated in *Manson,* once it is determined that the Constitution poses no bar to admissibility,

> evidence is for the jury to weigh. We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary gist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature. [432 U.S. at 116, 97 S.Ct. at 2254.]

Thus, so long as evidence is material, relevant, and probative, it is generally admitted, unless it is constitutionally infirm.

As to the facts as they are before us here, we question whether the proposed identification testimony was so weak and unreliable as to be kept from the jury. Our concern is illustrated by *Brown v. United States, supra,* where, by a pretrial order, "[t]he trial judge suppressed identification testimony by the victim because he viewed it as too weak due to the victim's lack of adequate opportunity to observe his assailants." *Id.* 349 A.2d at 468. This court held that the witness had been able to observe "to a degree that such testimony was probative of guilt [and was therefore sufficiently reliable to go to the jury] for whatever weight the jury might see fit to give it." *Id.* This issue will be resolved by the

trial court, assuming it is properly raised, on the basis of the facts as they exist when the evidence is offered. As stated, in view of our ruling on constitutional grounds, we have no facts to which we may apply the law of evidence and, therefore, only restate it. Suffice it to say that once the constitutional hurdle is overcome, identification evidence is on no different footing than evidence bearing on any other issue of a case, so far as the law of evidence is concerned. So long as evidence is probative, it should generally be allowed to go to the jury, assuming it is relevant, material and otherwise in accordance with the law of evidence. *See generally, Alcorn v. Erasmus,* 484 P.2d 813, 819 (Colo.App.1971) (error to admit photograph which was probative of material issue because it depicted a disfigured body, which depiction "could have aroused the passions and prejudice of the jury and caused them to be distracted from the true issues" of the case).

### III

Accordingly, the trial court's order is reversed and the case remanded for further proceedings.

*Reversed and remanded.*

FERREN, Associate Judge, concurring:

Although I concur in Judge NEBEKER's opinion (except for several sentences discussed at the end of this concurrence), I do not believe that it spells out clearly enough the relationship of this case to our analysis in *Patterson v. United States,* D.C.App., 384 A.2d 663 (1978)—and especially to the procedures we outlined there. Thus, a few more words are in order.

In *Patterson, supra,* we reviewed the constitutionality of a proposed in-court identification after the prosecutor had shown the victim several photographs of the accused on the morning initially set for trial. We held that there was no likelihood of irreparable misidentification, despite the use of refresher photos, because the victim's initial identification of the accused had been "unequivocal" and "unsuggested." *Id.* at 667. The victim had seen his assailant on the street soon after the crime and, without hesitation, had pointed him out to the police.[1]

The present case is different. It concerns a typical, inherently suggestive showup. The police had apprehended the accused before the victim pointed him out, not vice versa as in *Patterson, supra.* The victim's initial reaction, moreover, was equivocal (although she became more certain of her identification as she came closer to the accused). Later, at the suppression hearing, the victim candidly admitted that she did not know whether her ability to identify appellant in court would be due to the refresher photo or to her encounter at the showup scene.

At the suppression hearing the trial court concluded, first, that despite the suggestiveness of the showup procedure and some equivocation by the witness, these factors "did not render the [showup] identification unreliable or make a substantial likelihood of misidentification." [Tr. at 78.] The court accordingly denied the motion to suppress the initial showup identification.

Next, as to the proposed in-court identification, the court conducted the "two-stage inquiry" called for in *Patterson, supra* at 665:

(1) Was the identification procedure "unnecessarily suggestive and conducive

---

1. Specifically, we stated:
   It may well be true that the lapse of time between robbery and trial dimmed Mr. Holmes' memory of the suspects and that the single-photo displays helped bring his memory back. Nevertheless, as recent Supreme Court cases have made clear, these suggestive showings could not have created a "very substantial likelihood of irreparable *misidentification.*" *Simmons, supra,* 390 U.S. at 384, 88 S.Ct. at 971 (emphasis added). *See Neil, supra,* 409 U.S. at 198, 93 S.Ct. 375. At

worst, the "refresher" photos produced a misleadingly current, positive identification derived from a previously untainted one. Just as a procedure devoid of suggestion cannot yield the "primary evil" of misidentification, *id.,* a procedure that includes suggestive elements subsequent to an unequivocal, unsuggested identification does not pose an unconstitutional risk of misidentification—of trying and convicting the wrong person. [*Patterson, supra* 384 A.2d at 666–67.]

to irreparable misidentification"? [*Stovall v. Denno*, 388 U.S. 293, 302 [, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967)];

(2) If so, given the "totality of the circumstances," was the resulting identification reliable nonetheless? *Manson v. Brathwaite*, [432 U.S. 98 [, 97 S.Ct. 2243, 53 L.Ed.2d 96] (1977); *Neil v. Biggers*, 409 U.S. 188, 199 [, 93 S.Ct. 375, 34 L.Ed.2d 401] (1972); *see Simmons v. United States*, 390 U.S. 377, 384 [, 87 S.Ct. 1926, 18 L.Ed.2d 1149] (1968).]

Before evaluating the trial court's analysis, however, we should understand clearly why this two-stage inquiry is necessary, prior to an in-court identification, when the initial identification (showup, photo array, lineup) may be suppressible for suggestiveness or equivocation. *See Patterson, supra* at 668 n.7.[2]

If the witness has seen a refresher photo and the trial court *has* suppressed the initial (e. g., showup) identification, then the initial identification procedure has been found "unnecessarily suggestive and conducive to irreparable misidentification" (*Patterson* stage one). Thus, before any in-court identification can be made, the court must find it "reliable nonetheless" under the "totality of the circumstances" (*Patterson* stage two). If, on the other hand, the witness has seen a refresher photo but the trial court has *not* suppressed the initial identification (as in the present case), then the trial court should still conduct the stage two inquiry, for if the appellate court were to disagree and hold that the initial (e. g., showup) identification should have been suppressed for suggestiveness or equivocation, there would then be an alternative trial court

finding as to whether the in-court identification will be "reliable nonetheless" and thus admissible; i. e., whether there is an "independent source" for the in-court identification. *Patterson, supra* at 666 n.2.[3]

But what if the trial court denies the motion to suppress the initial identification, finding it constitutionally acceptable—and the appellate court agrees? We then have the two questions presented by this case: whether, from the *constitutional* and *evidentiary* perspectives, the in-court identification, after a refresher photo, is admissible.

The trial court here did not distinguish between these two perspectives, perhaps because the court read *Patterson, supra*, to say, by implication, that unless the initial identification is "unequivocal and unsuggested" (as it was in that case), an in-court identification should be automatically suppressed—on constitutional grounds—if the totality of the circumstances indicate that the witness, after seeing a refresher photo, does not have an independent basis for recollecting and thus identifying the accused. *See Patterson, supra* at 668 & n.7. We did not mean to create that impression. We intended, rather, to suggest that unless the initial identification was unequivocal and unsuggested—which, as in *Patterson*, would be a rare situation—the court should make the two-stage inquiry for the reasons elaborated above. We also intended, because of the facts of *Patterson*, to leave open the question central to *United States v. Hines*, 147 U.S.App.D.C. 249, 455 F.2d 1317, *cert. denied*, 406 U.S. 975, 92 S.Ct. 2427, 32 L.Ed.2d 675 (1972), which is now squarely presented in this case: once an initial identification, such as a showup, is held to be

2. In *Patterson, supra* at 668 n.7, we stated:
   We encourage trial courts to conduct the usual two-step inquiry as a precaution in all cases which are ambiguous; *i. e.*, where there is some evidence that the initial identification may have been equivocal or suggested. Moreover, we do not intend to limit trial courts' discretion to exclude evidence in cases where the peril of misidentification is a possibility. We agree with the D.C.Circuit Court of Appeals that the Supreme Court
   has formulated a broad standard of review which focuses upon the distinctive facts of

each case in their totality, and which relies very heavily upon the special capacity and experience of judges, trial and appellate, to discriminate between real and fancied dangers of the miscarriage of justice. [*Clemons v. United States, supra* [133 U.S.App.D.C. 27] at 34, 408 F.2d [1230] at 1237.]

3. The two-stage inquiry is also necessary when there has been no initial identification, other than by reference to a refresher photo, prior to the proposed in-court identification. *See United States v. Dailey*, 524 F.2d 911, 914–16 (1975).

"constitutionally acceptable" and thus admissible, despite elements of suggestiveness and equivocation, can a later in-court identification by the witness, whose memory is refreshed by a photograph of the accused just before trial, be suppressed on constitutional grounds? We answer "no." Although the refreshment procedure was "unnecessarily suggestive," it was not "conducive to irreparable misidentification," given the constitutionally acceptable showup. *Hines, supra,* 147 U.S.App.D.C. at 262–63, 455 F.2d at 1330–31; *Patterson, supra,* 384 A.2d at 666, 667. Thus, for constitutional purposes, the appellate court need not review the trial court's stage two, "reliability" (*i. e.,* "independent source") analysis; the in-court identification is to be permitted by virtue of the acceptable initial identification, although defense counsel is free to argue to the jury that the "refreshed" identification lacks credibility. *Patterson, supra* at 667.

But that does not end the inquiry, for as Judge Nebeker's opinion stresses, *ante* at ——, the trial court must next consider whether an in-court identification may be inadmissible on evidentiary grounds as "so inherently weak or unreliable as to lack probative value." *Sheffield v. United States,* D.C.App., 397 A.2d 963, 967 (1979). *See Reavis v. United States,* D.C.App., 395 A.2d 75, 78 (1978); *Patterson, supra,* 384 A.2d at 668 n.7. Recently, we noted that "[t]here is often considerable delay between initial identification and trial . . . ." *Jackson v. United States,* D.C.App., 395 A.2d 99, 105 (1978). Moreover, the government itself, in opposing a defense motion for a lineup near the trial date, has acknowledged that

> by waiting until a long period after the event occurred, as it occurred in the instant case, it is much more likely that the witness is not going to be able to make an identification. [*Id.*]

It follows, therefore, that even when the initial identification (showup, photo array, or lineup) is admissible through testimony, for example, by a police officer, the proposed in-court identification must be carefully scrutinized under the rules of evidence, especially when the witness admits that present memory has faded and a refresher photo has been used. Accordingly, the stage two "reliability" inquiry—the "totality of the circumstances"—still has an evidentiary, if not a constitutional significance when the initial (*e. g.,* showup) identification is admissible.

Because it is unclear in the present case whether the trial court barred an in-court identification solely on constitutional or also on evidentiary grounds—and because there can be no constitutional bar once the initial identification has been found constitutionally acceptable—we remand for an evidentiary ruling on the proposed in-court identification. *Ante* at 930–931.[4]

Once this court had disposed of the constitutional question and remanded the case for a ruling on evidentiary grounds, that should have ended the matter. The majority opinion, however, adds some conflicting signals to the trial court on the anticipated evidentiary ruling, despite admitting that there is no factual basis for doing so. More specifically, Judge NEBEKER writes: "As to the facts as they are before us here, we question whether the proposed identification testimony was so weak and unreliable as to be kept from the jury." *Ante* at 930. Four sentences later, however, he confirms: "As stated, in view of our ruling on constitutional grounds, *we have no facts to which we may apply the law of evidence and, therefore, only restate it.*" *Ante* at 931 (emphasis added). The trial judge should read the majority opinion to hold that he is free to make an independent determination of the evidentiary value of

4. There is a subtle difference between a proposed in-court identification of the accused as the person "identified at the showup scene" and such identification of the accused as the person observed during commission of the

crime. *See Jackson, supra* at 105–06 & n.12. This should be kept in mind as the government proffers and the trial court rules on the proposed identification.

the proposed in-court identification. *See Sheffield, supra,* 397 A.2d at 967; *Reavis, supra,* 395 A.2d at 78; *Patterson, supra,* 384 A.2d at 668 n.7 quoted in note 2 *supra.*