UNITED STATES of America

v.

**Esther D. FIELDS.**

**Crim. No. 79–0268.**

United States District Court, District of Columbia, Criminal Division.

Aug. 10, 1979.

As Amended Aug. 14, 1979.

Stephen W. Grafman, Washington, D. C., for defendant.

Douglas H. Behr, U. S. Dept. of Justice, Washington, D. C., for plaintiff.

## OPINION AND ORDER

HAROLD H. GREENE, District Judge.

On May 23, 1978, defendant, Esther Fields, was arrested pursuant to a Magistrate's arrest warrant for unlawful possession of dilaudid, a Schedule II controlled substance. On June 22, 1978, an indictment charging 38 counts of controlled substance act violations issued. Defendant was arraigned on those counts on June 29, 1978, at which time trial was set for August 28, 1978 and a status call and motions hearing for August 14, 1978. At the August 14th hearing, the government moved orally to dismiss the indictment without prejudice, stating as grounds for the motion that the government could not vouch for the credibility of an essential witness, one Dr. Samuel Rosser. Although defendant opposed the dismissal without prejudice—contending that the "essential witness", the physician from whom defendant obtained the allegedly fraudulent prescriptions, was the real target of the prosecution, that the indictment was a camouflaged attempt to intimidate her into testifying against the physician, that the dismissal was no more than an effort to gain additional time, and that the "lack of prejudice" caveat was an attempt to secure further leverage against defendant to cause her to testify—the Court granted the government's motion, noting that "in the event there is a reindictment, the question of prosecutorial abuse through possible intimidation and pressure, particularly in the sequence of indictment, dismissal, and reindictment, might again be considered, possibly on a more complete factual record". Defendant was reindicted on May 31, 1979.[1] Presently before the Court is her renewed motion to dismiss the indictment with prejudice.

### I

Defendant's contention is based upon the premise that there was insufficient evidence to support her first indictment. She claims that the only purpose of that indictment was to pressure her into testifying against Dr. Rosser, the real target of the investigation, and that it was not until the prosecution effected a plea bargain with Dr. Rosser that it had sufficient evidence to convict her. In that regard, she claims that the prosecution misused the grand jury[2]

1. The second indictment contains some additional counts.

2. Technically, indictments are returned by the grand jury. However, it is a well known and melancholy fact that grand juries have largely been transformed into mere instruments of the prosecution. See Note, The Grand Jury: Powers, Procedures, and Problems, 9 Col.J.L. & Soc.Prob. 681, 701–02 (1972–73); *United States v. Wagoner,* Crim.No. 55246–72 (D.C.Super.Ct. January 29, 1973). The Assistant United States Attorney who testified on the instant motion did not make any effort to suggest that the

—that it was manipulated into indicting her without a prosecutible case, used to gather evidence against her to support the pending indictment, held over her head to coerce her testimony, and, finally, used to punish her when all else failed. On that basis, defendant seeks to have the current indictment dismissed.[3]

The government, on the other hand, maintains that the first indictment was legitimately brought under the assumption that Dr. Rosser would be a key witness against defendant, and dismissed when additional evidence pointed to Dr. Rosser's own criminal involvement. It further contends that since Dr. Rosser submitted to a polygraph test and pleaded guilty in April, 1979, the prosecution has again been able to vouch for his credibility. Thus, it reasons, it has a solid case against defendant under the second indictment, and believed in good faith that it had a solid case when it originally sought the first.

The resolution of these conflicting claims turns on two factors. First, the Court must determine whether Esther Fields was originally indicted on the basis of a reasonable belief that there was sufficient evidence to convict her, or merely as a means of pressuring her to cooperate with the government despite the absence of such evidence. In other words, were the prosecutor's actions with respect to this defendant taken in good faith? Second, if the Court finds that they were not taken in good faith, it must determine whether such misconduct is sufficient to warrant a dismissal of the charges. For the reasons set forth below, the Court concludes that the government's

actions herein were improper and mandate that this action be dismissed.

## II

Good faith, like intent or state of mind, can generally only be established circumstantially. The circumstances here show quite clearly that, from the inception of this investigation, Dr. Rosser—not Esther Fields—was its primary target. This conclusion is buttressed by the fact that both this case and the Deborah Bethel case[4] were assigned to the Major Crimes Unit of the United States Attorney's Office,[5] which has particular expertise in investigating and prosecuting narcotics violations by physicians. The prosecutors were fully aware that these two individuals had repeatedly obtained prescriptions for thousands of dilaudid tablets from Dr. Rosser for alleged cancer patients whom he had never seen, many of whom did not even exist. And, as testimony at the hearing on this motion established, they knew Dr. Rosser had been receiving monies for writing these prescriptions. In view of this awareness, their claims that he was not a primary target, nor indeed any target at all, and that they were willing to vouch for his credibility on the witness stand against Esther Fields, are not credible. The Court finds that the prosecution never intended to use Dr. Rosser as a witness against this defendant at all.[6] And it is clear that without Dr. Rosser's testimony, the government did not have a prosecutible case against defendant.

These conclusions are corroborated by the subsequent history of this case. Several events in particular demonstrate the lack of

timing of the indictments was anything other than a purely prosecutorial, as distinguished from a grand jury, decision.

**3.** Essentially, defendant seeks to have the first indictment dismissed with prejudice—a question the Court reserved in its October 17, 1978 opinion. If such relief is granted, her reindictment would, of course, be barred.

**4.** Deborah Bethel was arrested on March 27, 1978 for securing 34 prescriptions for some 3,360 tablets of dilaudid (with a street value of

$84,000) from the same Dr. Rosser during a 14-day period in January, 1978.

**5.** While the Major Crimes Unit also handles major drug prosecutions not involving physicians, it does not get involved in routine drug matters.

**6.** The Assistant United States Attorney conceded that it would not be proper to rely on the testimony of the target of an ongoing investigation.

a bona fide intent[7] or ability to prosecute Mrs. Fields.

The first such incident occurred at the August 14, 1978 status call and motions hearing when, on the ground that it could not make out a case against defendant since it could not vouch for Dr. Rosser's credibility, the government—without warning—moved to dismiss the indictment some 14 days before the case was to go to trial. The government has since rationalized that Dr. Rosser's credibility was intact at the time of defendant's indictment, but plummeted after her arraignment when additional false prescriptions which inculpated Dr. Rosser in the scheme were discovered.[8] The difficulty with that argument is twofold. First, the additional evidence allegedly discovered after Mrs. Fields' arraignment was miniscule compared to that which the government already had in its possession prior to that time. Second, although the additional evidence which the prosecution claims "tipped the scales" against Dr. Rosser was discovered within a day or two of Mrs. Fields' June 29, 1978 arraignment, the prosecution waited until mid-August, when the prospect of trial was imminent, to dismiss the indictment.[9] The Court concludes that if there was no prosecutible case against defendant in August due to Dr. Rosser's lack of credibility, there was no prosecutible case against her in June when she was indicted and arraigned.

A second such incident occurred when the prosecutor threatened to indict defendant and Dr. Rosser together for conspiracy shortly before Christmas, 1978. Such an indictment, however, never materialized, and it may be assumed that the threat was never more than that. In fact, defendant was not indicted until May 31, 1979—after and only after Dr. Rosser had pleaded guilty himself. The December incident can only be regarded as an additional means of bringing pressure against Mrs. Fields.

Finally, it is of some significance that Dr. Rosser, the obvious "kingpin" of the illegal drug ring, has been treated with extreme leniency.[10] Mrs. Fields, on the other hand, who at best was a subordinate member of the illegal drug ring, was charged in lengthy indictments which multiplied every conceivable charge. In view of this treatment, it is difficult not to draw the conclu-

---

7. The Court's conclusion herein should not be equated with a determination that the individual prosecutors handling this case had private improper motives. They no doubt attempted to carry out their duties as they saw fit, and in accordance with what they perceived to be appropriate law enforcement procedure.

8. The government's view of Dr. Rosser's credibility has taken yet another 180 degree turn since then. After the prosecution was allegedly willing to rely on his testimony in June to convict defendant of the original charges, and not to rely on his testimony in August when those charges were dismissed, it is now again prepared to vouch for his credibility as its witness at the trial on the new charges. The reasons for this new turn on the roller coaster of Dr. Rosser's credibility—that since he took a polygraph test and pleaded guilty, he may be trusted—are not persuasive.

9. In that regard, it is significant that at the time these charges were dismissed, the prosecution may have had only 24 days left under the Speedy Trial Act in which to bring defendant to trial. That limited period of time may well have contributed to the government's decision to seek dismissal, investigate its insufficient case further, and reindict upon completion of

its investigation. Dismissal of an indictment for the purpose of subjecting the defendant to another prosecution at a later time under circumstances deemed more favorable to the prosecution is an abuse of the prosecutor's nolle prosequi authority. *United States v. Greater Blouse, Skirt & Neckwear Contractors Assn., Inc.,* 228 F.Supp. 483, 486 (S.D.N.Y. 1964). And to the extent that the prosecutor sought to investigate the case against defendant without dismissing the pending indictment, that practice has been roundly condemned. See *United States v. Dardi,* 330 F.2d 316, 336 (2d Cir. 1964).

10. The plea bargain with Dr. Rosser included the following: (1) he was to be charged only on a single count, (2) he would testify against Esther Fields, (3) he would not be prosecuted for any other charges arising out of false prescriptions written by him between August 19, 1977 and February 23, 1978, (4) the government would not allocute at the time of his sentencing, (5) the government would not oppose his release on bond pending sentencing, and (6) the government would request the Court to defer any ruling on the continuing status of his license to practice medicine.

sion that Mrs. Fields was "punished" for not cooperating with the prosecution in the first place.[11] Compare *Washington v. United States,* 404 A.2d 926, at 932 n. 8, 934 n. 10. (D.C.App.1979).

### III

There is no question but that the government may seek to secure the testimony of a validly-indicted individual against another person. Indeed, it is often through such "cooperation" that those at higher levels in conspiracies or other criminal endeavors can ever be brought to justice. The question raised in this case, however, is whether an individual may be indicted—without sufficient evidence against him—*solely* to secure his cooperation with the government in testifying against another. In the view of this Court, the answer is in the negative. See *Bordenkircher v. Hayes,* 434 U.S. 357, 364 (1978)[12]; *id.* at 362 n. 2, 98 S.Ct. 663, 54 L.Ed.2d 604 (Blackmun, J., dissenting); *Matter of Doe,* 546 F.2d 498, 502 (2d Cir. 1976); *Washington v. United States, supra,* at 933 n. 9; *United States v. Kleen Laundry & Cleaners, Inc.,* 381 F.Supp. 519, 523 (E.D. N.Y.1974); *United States v. Beasley,* 550 F.2d 261, 266 (5th Cir. 1977). See generally *Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); *United States v. Ammidown,* 162 U.S.App.D.C. 28, 497 F.2d 615 (D.C.Cir.1973); *Woodring v. United States,* 311 F.2d 417, 424 (8th Cir. 1973); *United States v. Sweig,* 316 F.Supp. 1148, 1153 (S.D.N.Y.1970); *United States v.*

*Greater Blouse, Skirt & Neckwear Contractors Association, Inc.,* 228 F.Supp. 483 (S.D. N.Y.1964).

Even the Attorney General's own regulations prohibit prosecutors from securing indictments where there is insufficient evidence to sustain a conviction.[13] By securing the first indictment against this defendant in June 1978 (and maintaining it through August 1978), the prosecutors violated their own regulations. See *Service v. Dulles,* 354 U.S. 363, 388–89, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957).

It follows that the original indictment, having been brought improperly, was subject to dismissal with prejudice. Dismissal of such an indictment is the only appropriate sanction to protect a defendant from the practice of "charging, dismissing without having placed a defendant in jeopardy, and commencing another prosecution at a different time or place deemed more favorable to the prosecution." *United States v. Ammidown, supra.* See also *Woodring v. United States, supra; United States v. Greater Blouse, Skirt & Neckwear Contractors Association, Inc., supra.* And, although generally a dismissal by the government does not bar reinstitution of a prosecution, an exception is made where there has been a harassment of a defendant, 8B Moore's Federal Practice, Para. 48.-02, p. 48–10, *citing Klopfer v. North Carolina,* 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967), or where he has been disadvantaged

---

**11.** The Court is not being critical of the plea bargains by which the prosecution offers concessions to those who plead guilty, without extending similar consideration to others who do not either demonstrate contrition or provide cooperation to law enforcement authorities. See *Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). However, the government's actions regarding the two defendants here at issue are so grossly disproportionate in terms of their involvement as to raise serious questions concerning the prosecutor's use of his discretion and his bona fide intent to prosecute Mrs. Fields on her first indictment.

**12.** In *Bordenkircher,* the Supreme Court suggested that a prosecutor's offer during plea bargaining of adverse or lenient treatment for some person *other* than the accused would

pose a danger of inducing a false guilty plea by "skewing the assessment of the risks a defendant must consider". 434 U.S. at 364 n. 8, 98 S.Ct. at 668 n. 8. See also ALI Model Code of Pre-Arraignment Procedure, Commentary to § 350.3, pp. 614–54 (1975); *Brady v. United States,* 397 U.S. 742, 758, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *Washington v. United States, supra.*

**13.** The Attorney General has instructed that a United States Attorney shall not initiate a prosecution unless he has "reason to believe that he will have sufficient admissible evidence at trial to sustain a conviction". Memorandum to Prosecutors (Attorney General Edward H. Levi, January 18, 1977), *reprinted in,* National Law Journal (November 13, 1978) at pp. 14 *et seq.*

for exercising his rights. *Blackledge v. Perry,* 417 U.S. 21, 25, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974); *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

[3] In its October 17, 1978 opinion and order, this Court held in abeyance the question of whether the August 14, 1978 dismissal was to be with prejudice or without prejudice, pending the development of a fuller evidentiary record in the event of reindictment. That record has now been developed, and it demonstrates that the original indictment was the product of inappropriate conduct. Accordingly, that dismissal will be deemed to have been with prejudice, thus precluding and therefore vitiating the second indictment of Esther Fields.

Alternatively, the second indictment is appropriately dismissed under the theories set forth in *United States v. Ammidown, supra,* and *United States v. Greater Blouse, Skirt & Neckwear, supra* —that the government is not free to indict, dismiss, and reindict solely to achieve a more favorable prosecutorial posture.

For these reasons, it is this 10th day of August, 1979,

ORDERED that the indictments in this matter be and they are hereby dismissed with prejudice.