Theodore JACKSON, Appellant,

v.

UNITED STATES, Appellee.

Roy SMITH, Jr., Appellant,

v.

UNITED STATES, Appellee.

Nos. 11674, 11749.

District of Columbia Court of Appeals.

Argued Jan. 5, 1978.

Decided Dec. 1, 1978.

John W. Sansing, Washington, D. C., appointed by this court, for appellant Jackson.

Harvey Smith, appointed by this court, for appellant Smith.

Michael L. Lehr, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Peter E. George, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KELLY, KERN and FERREN, Associate Judges.

FERREN, Associate Judge:

A jury on August 3, 1976, convicted Theodore Jackson of armed robbery, D.C.Code 1973, §§ 22–2901, –3202, and Roy Smith, Jr. of armed robbery and carrying a pistol without a license, D.C.Code 1973, § 22–3204.[1] The court sentenced Jackson and Smith to prison terms of eight to twenty-four years each. The court also imposed a one-year sentence on Smith for the weapons conviction. Appellants contend that the evidence underlying each conviction was insufficient. Appellant Smith argues, additionally, that the trial court abused its discretion in denying his motion for a lineup. We agree that the evidence does not support Smith's conviction for carrying a pistol without a license—and thus reverse that conviction. We find no other error and accordingly affirm the convictions for armed robbery.

### I.

After 8:00 p. m. on December 17, 1975, Frank Malickson, a Safeway Stores employee, left the Safeway at 1700 Corcoran Street, N.W., by car to make a deposit for the store at a nearby branch of the Riggs National Bank. He carried a locked brown canvas Riggs deposit bag containing $650. As Malickson drove westbound in an alley between Corcoran and Q Streets, two men stopped his car at gunpoint. They demanded money and his car keys. Malickson complied by passing the deposit bag and his keys to the shorter of the two, who was standing closest to him one or two feet away. The assailants ran west down the alley and then turned up New Hampshire Avenue, with Malickson following behind them on foot at a distance of one-half to three-quarters of a block. Malickson testified that one of the men fired at least one shot in his direction, and that the chase ended when the two men climbed into the passenger side of an automobile which had pulled alongside them on New Hampshire Avenue between R and S Streets.

While on routine patrol, Metropolitan Police Sergeant Glenn Hoppert came upon a small crowd which had gathered around Malickson after the robbery and shooting. Malickson told Sergeant Hoppert what had happened and gave him both the license tag number and the color of the car which had picked up the assailants. Sergeant Hoppert then took Malickson to the nearby 1600 block of T Street, where Officers Deborah Weinshimer and Clarence Black had stopped a brown automobile for running a red light at the intersection of 17th Street and New Hampshire Avenue. The occupants of this vehicle were appellants and their codefendant, Linda McMichaels, who was the owner and driver of the car.[2]

After Sergeant Hoppert verified that this automobile was the one which Malickson

1. Appellants also were charged with robbery, D.C.Code 1973, § 22–2901, and assault, D.C. Code 1973, § 22–502. These charges were dismissed on government motion.

2. Ms. McMichaels was charged with armed robbery, robbery, assault with a dangerous weapon, and as an accessory after the fact to the armed robbery. She was convicted of the accessory charge and sentenced to prison for a term of three to fifteen years. The court suspended execution of the sentence and placed her on probation for three years.

had observed on New Hampshire Avenue, he asked Malickson whether he could identify any of the car's occupants, who by this time had been moved to the rear seat of the police scout car. Malickson could identify only appellant Smith—the shorter of the two who had accosted him 10 to 15 minutes earlier. At trial, Malickson pointed out Smith as the man he had identified at the showup scene.

The police found a revolver loaded with five live rounds and one spent shell, a locked Riggs deposit bag, and a set of keys in the street approximately 30 to 50 feet behind McMichaels' car. Malickson identified the keys and the deposit bag as those taken from him. He testified at trial that the gun in evidence was similar to the one displayed in the alley. The police were able to recover from the driver's side window of McMichaels' car a latent fingerprint which proved to be Jackson's.

Neither appellant testified. However, their codefendant, Ms. McMichaels, did, stating that between 6:00 and 7:00 p. m. on December 17, 1975, she had picked up Smith in her brown, 1975 Granada and driven him to Georgetown. Later, she said, as they drove back toward the downtown area, Smith at one point "hollered out the window" at "a dude" and got out of the car for four or five minutes. McMichaels did not see where he went and did not recall that he was carrying anything unusual when he returned. McMichaels further testified that while Smith was out of the car, she noticed Jackson standing at a nearby corner. When he returned to the car, Smith asked Jackson if he wanted a ride; Jackson accepted the offer. McMichaels then stated that as Jackson entered the car, another vehicle sped by—almost hitting Jackson and her car. She said that she followed this car in an effort to get its license number for the police. At that point, she said, the police stopped her and asked for her driver's license and registration. Jackson got out of the car and went back to the police car. He then came back to the driver's side of McMichaels' car and spoke with McMichaels.

Michael Johnson also testified for the defense that on December 17, between 8:00 and 9:00 p. m., he was riding his bicycle in the vicinity of 20th or 21st Street, N.W., when he saw Smith in a brown car with two other persons. He said that Smith, whom he knew, called out his name, got out of the car, and spoke briefly with him before returning to the vehicle.

Another defense witness, Lucious Page, testified that Jackson had come to his apartment at 1818 Riggs Place, N.W., on a "working day" in the middle of December 1975, between 6:30 and 7:30 p. m. Page recalled telling Jackson, when he left some forty-five minutes later, that the best place to catch a cab was 16th Street or Connecticut Avenue.

## II.

Appellants' convictions for armed robbery are supported by sufficient evidence. *See* Part I *supra.* Mr. Malickson identified Smith, and the other evidence construed most favorably to the government, *see Calhoun v. United States,* D.C. App., 369 A.2d 605, 607 (1977), would permit a reasonable jury to find both appellants guilty beyond a reasonable doubt. *See id.; Crawford v. United States,* 126 U.S.App. D.C. 156, 158, 375 F.2d 332, 334 (1967); *Curley v. United States,* 81 U.S.App.D.C. 389, 392, 160 F.2d 229, 232, *cert. denied,* 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947). The fact that the evidence against Jackson was wholly circumstantial does not affect this conclusion. *United States v. Harris,* 140 U.S.App.D.C. 270, 284–85, 435 F.2d 74, 88–89 (1970), *cert. denied,* 402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 152 (1971); *Hunt v. United States,* 115 U.S.App.D.C. 1, 3, 316 F.2d 652, 654 (1963); *see United States v. Jones,* 170 U.S.App.D.C. 362, 517 F.2d 176 (1975); *United States v. Johnson,* 139 U.S. App.D.C. 193, 432 F.2d 626, *cert. denied,* 400 U.S. 949, 91 S.Ct. 257, 27 L.Ed.2d 255 (1970).

## III.

Appellant Smith's conviction of carrying a pistol without a license, D.C.

Code 1973, § 22–3204, is a different matter.[3] Smith claims that this conviction is flawed by the government's failure to demonstrate that he was the one who held the gun.[4]

■ Although Malickson initially testified at trial that two men accosted him waving "their guns," he stated when shown the single weapon presented into evidence that "[i]t looks like *the* revolver that was used towards me." (Emphasis added.)[5] After reviewing the record, we conclude that no reasonable juror could find beyond a reasonable doubt that more than one weapon was used. Furthermore, the trial record is devoid of any testimony as to which of the defendants had the gun before, during, or after the robbery. Thus, absent direct evidence that Smith carried the gun, there is only one theory on which

he can stand convicted of the weapons charge: that Smith and Jackson can be said to have jointly possessed (*i. e.,* Smith constructively possessed) the pistol.[6]

In *Porter v. United States,* D.C.App., 282 A.2d 559, 560 (1971), we affirmed a § 22–3204 conviction of an automobile driver who had "convenient access" to a revolver under the front seat on the passenger side. Similarly, in *Waterstaat v. United States,* D.C. App., 252 A.2d 507, 509 (1969), we earlier had affirmed a similar conviction on the basis of the driver's "convenient access" to a pistol on the front seat of the car next to him. In each of these cases, the record showed that at the time the police apprehended two suspects, neither one was carrying the weapon. We affirmed each

3. D.C.Code 1973, § 22–3204, provides as follows:

No person shall within the District of Columbia carry either openly or concealed on or about his person, except in his dwelling house or place of business or on other land possessed by him, a pistol, without a license therefor issued as hereinafter provided, or any deadly or dangerous weapon capable of being so concealed. Whoever violates this section shall be punished as provided in section 22–3215, unless the violation occurs after he has been convicted in the District of Columbia of a violation of this section or of a felony, either in the District of Columbia or in another jurisdiction, in which case he shall be sentenced to imprisonment for not more than ten years.

This offense has three essential elements: (1) carrying an operable pistol, (2) without a license, (3) with the intent to do those two acts. *See Anderson v. United States,* D.C.App., 326 A.2d 807, 811 (1974), *cert. denied,* 420 U.S. 978, 95 S.Ct. 1405, 43 L.Ed.2d 659 (1975); *Mitchell v. United States,* D.C.App., 302 A.2d 216, 217 (1973); *Brown v. United States,* D.C.Mun.App., 66 A.2d 491, 493 (1949); *Cooke v. United States,* 107 U.S.App.D.C. 223, 225, 275 F.2d 887, 889 (1960); Criminal Jury Instructions for the District of Columbia, No. 4.81 (3d ed. 1978).

4. At the pretrial hearing on the motion to suppress Malickson's identification of Smith, Malickson testified that it was the shorter of the two assailants, *i. e.,* the one later identified as Smith, who held the gun. This testimony was not elicited at trial. We therefore cannot consider it in determining whether a reasonable juror could find Smith guilty beyond a reasonable doubt of carrying an unlicensed pistol.

5. Review of the entire colloquy between Malickson and the prosecutor concerning the iden-

tification of the revolver strengthens the implication that the complainant observed but a single weapon during the course of the crime:

Q. Now, Mr. Malickson did you have an opportunity to look at the weapon that was displayed in your face?
A. Pardon me?
Q. Did you have an opportunity to look at this weapon when it was first displayed to you?
A. Yes.
Q. What did this weapon look like to you?
A. A dark gun.
Q. [Showing government's Exhibit No. 2] Can you tell me what that looks like to you?
A. It looks like the revolver that was used towards me.

6. The government argues that Smith could be convicted on an aiding and abetting theory. *See* D.C.Code 1973, § 22–105. The initial problem with that argument, however, is that evidence was not introduced to show that Jackson or McMichaels (or anyone else besides Smith) had no license for the gun. Nor was anyone else charged, let alone convicted, of a § 22–3204 violation. Thus, there was inconclusive evidence of an unlicensed weapons crime that Smith can be said to have aided and abetted. *Payton v. United States,* D.C.App., 305 A.2d 512, 513 (1973) ("there must be evidence that someone other than defendant was the principal whom the defendant aided and abetted"); *Morgan v. United States,* 159 F.2d 85, 87 (10th Cir. 1947) ("One cannot aid and abet in the commission of a crime unless there is another who has committed the offense"); *see United States v. Horton,* 180 F.2d 427, 430–31 (7th Cir. 1950).

conviction, however, because the evidence showed that the pistol had been within easy reach.

■ In the present case, it is undisputed that only one defendant carried the weapon during the armed robbery, and there is no direct evidence that the other ever carried or had "convenient access" to it—before, during, or after the robbery. There is, of course, strong circumstantial evidence that the unlicensed pistol was in the getaway car in which both Smith and Jackson were riding. *See* Part I *supra*. Affirmance of the weapons conviction on these bare facts, however, in effect would announce a *per se* rule under § 22–3204, deeming all passengers in a motor vehicle to be carrying a pistol which only one of them has been seen to possess or control. That far we are not prepared to go. To support a conviction for carrying a pistol without a license, the record must show some facts manifesting possession, or at least convenient access. *Compare Porter, supra* and *Waterstaat, supra, with Hill v. District of Columbia,* D.C.App., 264 A.2d 145, 146 (1970) (conviction for unregistered gun and ammunition, in violation of police regulations, reversed where appellant-bailee of car had arrived on the scene after police had found the gun under the front seat).

On the facts here, we cannot say that a jury reasonably could find that appellants jointly possessed the unlicensed pistol. Therefore, in the absence of evidence that Smith carried it, his conviction on the weapons charge, § 22–3204, must be reversed.

### IV.

On June 18, 1976, six months after Malickson's showup identification of appellant Smith, and approximately six weeks before trial, Smith moved for a court-ordered lineup (no previous lineup had been held). At a hearing on the motion the next day, Smith testified that at the time of arrest he had overheard Malickson tell police officers that he was upset and unsure of his ability to identify either assailant. Defense counsel argued that because of the possible unreliability of the showup identification, as well as the inherent suggestiveness of any in-court identification, a lineup would offer the only nonsuggestive opportunity to test Malickson's ability to identify Smith. The court denied the motion. Malickson later identified Smith at trial as the individual he had identified to the police at the showup scene 10 to 15 minutes after the robbery.[7]

■ Recently, in *Berryman v. United States,* D.C.App., 378 A.2d 1317 (1977), this court recognized the authority—and, on occasion, the obligation—of the trial court to order a lineup on defense motion.[8] We identified the circumstances:

> Generally, such a lineup may be appropriate where the defendant, on timely motion, makes a showing that eyewitness identification is materially at issue, and there exists, in the particular case, a reasonable likelihood of a mistaken identification which a lineup would tend to resolve. [*Id.* at 1320 (footnote omitted).]

Thus, trial court discretion should turn on three factors: whether the motion is "timely," the identification is "materially at issue," and, absent a lineup, there is a "reasonable likelihood of mistaken identification."

■ The government argues that Smith's motion, six months after the robbery and six weeks before trial, was untimely. In

---

7. Immediately prior to trial, defense counsel moved to suppress any in-court identification by Malickson. Counsel argued that the suggestiveness of an in-court identification would be aggravated by the fact that he had accepted the prosecutor's invitation to interview Malickson prior to trial, had introduced himself as Smith's counsel, and would be sitting next to Smith at trial. Defense counsel requested, alternatively, that Smith be permitted to sit in the courtroom, not at counsel table. The trial court denied the

motion and request—rulings not challenged on this appeal.

8. "Because the People are in a position to compel a lineup and utilize what favorable evidence is derived therefrom, fairness requires that the accused be given a reciprocal right to discover and utilize contrary evidence." *Evans v. Superior Court of Contra Costa County,* 11 Cal.3d 617, 623, 114 Cal.Rptr. 121, 125, 522 P.2d 681, 685 (1974).

the government's view, a lineup is timely only if held soon after arrest as a means of testing reliability of the on-scene, showup identification (or other basis for arrest), with a view to early release of a suspect wrongly taken into custody. *See Wise v. United States,* 127 U.S.App.D.C. 279, 282, 383 F.2d 206, 209 (1967), *cert. denied,* 390 U.S. 964, 88 S.Ct. 1069, 19 L.Ed.2d 1164 (1968).

In filing his lineup motion, however, Smith had another, equally important concern: reliability of any in-court identification which the government might call upon Malickson to make. There is often considerable delay between initial identification and trial (in this case 7½ months). There is, moreover, inherent suggestiveness in a defendant's location at the table next to his counsel at trial. *See United States v. Williams,* 436 F.2d 1166, 1168 (9th Cir. 1970), *cert. denied,* 402 U.S. 912, 91 S.Ct. 1392, 28 L.Ed.2d 654 (1971).[9] Finally, the prosecutor is known on at least one occasion to have shown a witness "mug shot" photographs of an accused prior to an anticipated in-court identification, in order to refresh the memory. *See Patterson v. United States,* D.C.App., 384 A.2d 663 (1978). Arguably, therefore, if defense counsel anticipates an in-court identification, the most appropriate time for a lineup—in the event one has not yet been held—is sometime near the trial date, as a way of testing that proposed identification with a preliminary, nonsuggestive procedure.[10]

At oral argument, counsel for the government stated that a lineup near the trial date could prejudice the government because the witness, by that time, might not be able to identify the accused. More particularly, counsel said,

by waiting until a long period after the event occurred, as it occurred in the instant case, it is much more likely that the witness is not going to be able to make an identification.

That statement demonstrates precisely why the lineup requested here *was* timely. If the government intends to call a witness for an in-court identification, and there has been no earlier, nonsuggestive identification procedure, the very uncertainty of identification provides a sound reason why a lineup near the trial date would be a timely, indeed desirable, check against a potentially suggestive, even refreshed in-court identification.

■ As to the second *Berryman* criterion, Malickson's identification of Smith was, without doubt, "materially at issue," despite the otherwise strong, circumstantial evidence of guilt. *See* Part I *supra.* There is, accordingly, one remaining inquiry: whether, without the lineup, there was "a reasonable likelihood of a mistaken identification."

The showup scene was suggestive. Smith and the other two defendants were inside the police scout car at the time of the showup identification. *See Russell v. United States,* 133 U.S.App.D.C. 77, 81, 408 F.2d 1280, 1284, *cert. denied,* 395 U.S. 928, 89 S.Ct. 1786, 23 L.Ed.2d 245 (1969).[11] On the other hand, it is important to note that Malickson only identified Smith in court as the man he had identified at the showup scene; he did not directly identify Smith as one of the men who had robbed him in the alley. Officer Weinshimer then took the stand and corroborated Malickson's showup identification. Because the in-court identification was therefore limited to confirmation of a showup identification, which a police officer independently corroborated,

---

9. "When asked to point to the robber, an identification witness—particularly if he has some familiarity with courtroom procedure—is quite likely to look immediately at the counsel table, where the defendant is conspicuously seated in relative isolation." *United States v. Williams, supra* at 1168.

10. If the government disclaims any intention to call for an in-court identification, this particular

justification for timeliness of a defense lineup motion near the trial date is, of course, inapplicable.

11. At trial, Malickson testified that Sergeant Hoppert, while transporting Malickson to T Street, "told me he could get my keys back, and he would like me to identify the people who robbed me."

the likelihood of a mistaken identification—of the limited sort given—was practically nil.[12]

Our conclusion is reinforced by the trial court's denial of the motion to suppress the in-court identification, which was not appealed and is thus the law of the case. *See* note 8 *supra.* If that identification was not suppressible for suggestiveness (and thus for possible misidentification), based on the circumstances of the showup, on defense counsel's interview with Malickson, and on Smith's presence at counsel table in court, we do not perceive how the failure to conduct a lineup alone can produce a likelihood of misidentification warranting reversal.

In summary, when the government intends to have a witness make an in-court identification, without having conducted a nonsuggestive identification procedure, a trial judge's decision to deny a defense request for a lineup is questionable even when the request is near the trial date. On this record, however, we cannot say that the judge abused her discretion, *see Berryman, supra* at 1320–21, for there was evidence sufficient for a finding that misidentification was not likely.

## V.

Accordingly, we affirm appellants' convictions for armed robbery and reverse appellant Smith's conviction for carrying a pistol without a license.

*So ordered.*

---

**12.** It is true, of course, that the distinction between an eyewitness' in-court confirmation of a showup identification and an in-court identification of his assailant as such may be too subtle for the jury to grasp (especially when the time between the robbery and the showup is so short). Nevertheless, at the hearing on Smith's motion to suppress it is clear that neither defense counsel nor the prosecutor contemplated a more telling identification than the one given—which defense counsel was free to ask the jury to discount. Had counsel contemplated Malickson's identifying Smith as one of the men he had seen in the alley, presumably there would have been a discussion at the hearing on whether, despite the suggestiveness of the showup, Malickson's identification under the totality of the circumstances could be considered "reliable nonetheless," *i. e.*, based on an "independent source," *See Patterson v. United States, supra* at 665–66.