William E. BROWN, Appellant,

v.

UNITED STATES, Appellee.

No. 86–223.

District of Columbia Court of Appeals.

Argued Oct. 20, 1987.
Decided Aug. 5, 1988.

Act, one repudiated by the Congress.

Charles E. Chisholm, appointed by the court, for appellant.

Clifford T. Keenan, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty. at the time the brief was filed, and Michael W. Farrell, Helen M. Bollwerk, and Roscoe C. Howard, Jr., Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before MACK, BELSON, and STEADMAN, Associate Judges.

BELSON, Associate Judge:

A jury convicted William Brown of carrying a pistol without a license, a violation of D.C.Code § 22–3204 (1981). Brown raises two principal issues on appeal. First, he argues that the trial court erred in denying his motion to suppress certain physical evidence obtained during a purportedly illegal *Terry* stop. Second, he argues that the trial court erred in denying his motion for judgment of acquittal on the charge of carrying a pistol without a license. We affirm.

At about 1:00 a.m. on February 27, 1985, Officer Gallahan of the Metropolitan Police Casual Clothes Squad, assigned to work in the Georgetown area due to a number of street robberies, observed appellant and his two codefendants, Lucas and Bolling, walking in a "hurried manner" and dressed in jogging outfits. The three men had come from a block that was not well lit and contained only condominiums and a nightclub the officer knew to have a dress code. Gallahan called for assistance as he watched the three men, who got into Lucas' small Honda Prelude automobile and began to leave the area at a speed faster

than the surrounding traffic and in excess of the speed limit. Officer Bender, another member of the casual clothes unit, also observed the defendants walk hurriedly to an automobile and then drive off in a hurried manner, faster than the surrounding traffic.

Lucas was driving, appellant was in the front passenger seat, and Bolling was in the back seat. Gallahan, who followed in his unmarked car, observed as Bolling appeared to lie down in the back seat, and periodically peer up over his shoulder to look out the back window. Gallahan, an experienced officer, considered such behavior consistent with actions typically taken by individuals seeking to secrete themselves while leaving a crime scene.

A marked police car responded to Gallahan's call for assistance in stopping the Honda and, as the marked police car attempted to pull the Honda over, Gallahan, who had pulled up directly alongside defendants' vehicle, observed Bolling sit up slightly, turn quickly forward, and bend down as if he were placing something on the floorboard. Bolling testified that as the car was being stopped he slid the gun under the driver's seat. Bolling estimated the amount of time between his sliding the gun under the seat and the stopping of the car by police to be "no less than a minute, if it was that much." Once the Honda was stopped and the defendants had gotten out of the vehicle, Gallahan observed a .25 caliber automatic handgun "lying in the rear of the vehicle, just to the left of what is a small hump ..., just behind and between the two front seats, which are bucket seats." The gun contained six live rounds of ammunition. Police also found a BB gun and pellet gun in the car's trunk.

At trial, the jury heard conflicting testimony as to events leading up to the presence of appellant, Bolling, and Lucas in Georgetown. Bolling, testifying as a government witness, asserted that on the evening in question he and the other two men met in Maryland. In due course, Bolling left the other two, went to his house to pick up a pistol, then rejoined appellant and Lucas, and showed them the pistol. The three men soon departed, driving around the Sheriff Road and Suitland areas of Maryland for some time before eventually heading into the District of Columbia. Upon arriving in the Georgetown area, they walked around together through dimly lit streets. As they walked, Bolling had the gun on his hip, and both Lucas and appellant were aware of that fact.

Lucas and appellant told a markedly different story. They testified that they set out alone from Maryland for the District of Columbia, and only after arriving in D.C. did they meet Bolling. Although the individual accounts of appellant and Lucas differ as to exactly what the three men did and where they went before they entered the Honda in Georgetown, both testified that at no time did they know that Bolling was carrying a pistol.

A jury convicted appellant of carrying a pistol without a license.[1] This appeal followed.

We first address appellant's argument that the trial court erred in denying his motion to suppress certain evidence taken from the automobile during what appellant contends was an illegal *Terry* stop. We disagree.

In denying appellant's motion to suppress, the trial court described the totality of what police observed as follows:

> At trial, the court granted appellant's motion for acquittal on the two counts of carrying a dangerous weapon, but submitted to the jury the counts of carrying a pistol without a license and unregistered firearm/ammunition violations. The jury found appellant guilty of carrying a pistol without a license and not guilty as to the unregistered firearm/ammunition charges. The jury found Lucas guilty on both counts of carrying a dangerous weapon and also on the count of carrying a pistol without a license. Like appellant, Lucas was acquitted on the unregistered firearm/ammunition counts.

1. Appellant, Lucas and Bolling were jointly charged with two counts of carrying a dangerous weapon (the pellet gun and BB gun), D.C. Code § 22–3204 (1981); one count of carrying a pistol without a license, D.C.Code § 22–3204 (1981); one count of possessing an unregistered firearm, D.C.Code § 6–2311(a) (1981); and one count of illegally possessing ammunition, D.C. Code § 6–2361 (1981 & 1987 Supp.). By plea agreement, Bolling pled guilty to one count of carrying a pistol without a license arising out of the instant case and one count of possessing PCP in an unrelated case.

You have a police officer in Georgetown that sees two individuals who in his opinion and based upon his experience, are not properly attired to frequent the establishment in the particular block that the police officer is in. He sees the individuals hurriedly walk down the street and get into a car and drive off at a high rate of speed which exceeds the speed limit.

Being the prudent police officer that he is, he follows the vehicle and sees one in the back seat disappear and peek over the rear and out the rear window. It's pretty suspicious activity, isn't it, counsel?

\* \* \* \* \* \*

And you also have to add the element that the police officer has a personal experience with these types of situations before. He's encountered the situation before.

Based on the foregoing, the trial court denied appellant's motion to suppress.

 It is well established that, "in evaluating behavior for purposes of assessing whether there existed a basis for a stop or seizure, [the court] must look to the totality of what the police observed." *United States v. Bennett,* 514 A.2d 414, 416 (D.C.1986); *see also Smith v. United States,* 295 A.2d 64, 66 & n. 7 (D.C.1972), *cert. denied,* 411 U.S. 951, 93 S.Ct. 1932, 36 L.Ed.2d 414 (1973). In this context, a "police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" an investigatory stop. *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). *Lawrence v. United States,* 509 A.2d 614, 615 (D.C. 1986). "Even if each specific action of appell[ant] was of itself susceptible of an explanation consistent with innocence of [criminal conduct], the observing police officer may see a combination of facts that make out an articulable suspicion." *Bennett, supra,* 514 A.2d at 416. In such a circumstance, "[t]he Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug

his shoulders and allow a crime to occur or a criminal to escape." *Adams v. Williams,* 407 U.S. 143, 145, 92 S.Ct. 1921, 1922, 32 L.Ed.2d 612 (1971). Rather, where a given combination of facts is present and results in an articulable suspicion, it is reasonable for police officers to initiate an investigatory stop.

 In the instant case, the specific and articulable facts observed by the police officers include: (1) a high incidence of street robberies in the neighborhood; (2) the late hour in the evening; (3) appellant and his companions came from a dimly lit street; (4) they were walking in a hurried manner; (5) their clothing was out of character for the only public establishment in the area they were coming from; (6) they entered a car and drove off at an excessive speed; and (7) as the car drove away, one person lay or crouched in the back seat, peeking up and looking back several times. Viewing the facts in the instant case objectively as the officer knew them at the time, *Coleman v. United States,* 337 A.2d 767, 769 (D.C.1975), we are persuaded that the combination of facts justified the police officer's suspicion and accompanying investigatory stop.

Appellant also assigns error to the trial court's denial of his motion for judgment of acquittal on the carrying a pistol without a license count. D.C.Code § 22–3204 (1981). In order to prevail on a motion for judgment of acquittal, "appellants must show that 'there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt.'" *Easley v. United States,* 482 A.2d 779, 781 (D.C. 1984) (quoting *Curley v. United States,* 81 U.S.App.D.C. 389, 392–93, 160 F.2d 229, 232–33, *cert. denied,* 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947)). A motion for judgment of acquittal should not be granted where the evidence presented at trial is such that a reasonable person could find guilt beyond a reasonable doubt. *See United States v. Hubbard,* 429 A.2d 1334, 1337 (D.C.), *cert. denied,* 454 U.S. 857, 102 S.Ct. 308, 70 L.Ed.2d 153 (1981). The evidence must be viewed in the light most favorable to the government, *Calhoun v.*

*United States,* 369 A.2d 605, 607 (D.C. 1977), with due deference to the right of the jury to consider credibility, weigh the evidence, and draw reasonable inferences of fact. *Hubbard, supra,* 429 A.2d at 1337–38; *Singletary v. United States,* 383 A.2d 1064, 1069 n. 4 (D.C.1978). On appeal, this court must review the evidence according to these same standards. *Morrison v. United States,* 417 A.2d 409, 412 (D.C. 1980). Accordingly, if "there [is] no evidence upon which a jury could base its conviction, then the conviction should be reversed." *Hamilton v. United States,* 395 A.2d 24, 28 (D.C.1978); *Patterson v. United States,* 301 A.2d 67, 70 (D.C.1973).

To support a conviction for carrying a pistol without a license, D.C.Code § 22–3204 (1981), the government bears the burden of proving possession, either actual or constructive. It is undisputed that appellant was not found in actual possession of the pistol.

▮▮▮ Because the weapon was not in the actual possession of the appellant at the time of its discovery, it was incumbent upon the government to prove that he constructively possessed it. We determine whether appellant had constructive possession by a two-part analysis; we inquire (1) whether appellant knew of the presence of the weapon, and (2) whether he had dominion and control over it. *Easley, supra,* 482 A.2d at 781; *Tucker v. United States,* 421 A.2d 32, 35 (D.C.1980); *Hill v. District of Columbia,* 264 A.2d 145, 146 (D.C.1970). Thus, "[t]o prove constructive possession, evidence must be adduced establishing that the pistol was conveniently accessible to appellant and that he knew of its pres-

ence." *Tucker, supra,* 421 A.2d at 35; *Johnson v. United States,* 309 A.2d 497, 499 (D.C.1973), *cert. denied,* 416 U.S. 951, 94 S.Ct. 1960, 40 L.Ed.2d 301 (1974); *Jones v. United States,* 299 A.2d 538, 539 (D.C. 1973). Constructive possession may be established by either direct or circumstantial evidence. *Logan v. United States,* 489 A.2d 485, 491 (D.C.1985); *Hubbard, supra,* 429 A.2d at 1338.[2]

It is not necessary, therefore, that the government offer direct proof regarding the first inquiry, whether appellant knew of the presence of the weapon; rather, the jury may infer such knowledge from circumstantial evidence. *Logan, supra,* 489 A.2d at 491; *Tucker, supra,* 421 A.2d at 35. However, there are instances in which "[t]he government must show a connection between the seized article and the criminal venture in order to enable the jury reasonably to infer the venturers' *knowledge* of the article." *Easley, supra,* 482 A.2d at 782 (emphasis supplied). In cases where "the government fail[s] to adduce sufficient evidence of one element of constructive possession, knowledge," the inquiry stops and the court "need not consider the sufficiency of the evidence of the other, dominion and control." *Id.*

▮▮▮ In the instant case, the evidence presented at trial was plainly sufficient to support the jury's finding that the evidence satisfied the knowledge phase of the constructive possession analysis. Bolling testified that after the three men had met in Maryland, he, Bolling, left the company of the other two and went to his home to retrieve a pistol. Bolling testified further

---

**2.** With regard to possession of the weapon, the trial court instructed the jury as follows:

The law recognizes two kinds of possession, actual possession and constructive possession. A person who knowingly has direct physical control over a thing at a given time is then in actual possession of it. A person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion and control over a thing, either directly or through another person or persons, is then in constructive possession of it.

The law also recognizes that possession may be sole or joint. If one person alone has

actual or constructive possession of a thing, possession is sole. If two or more persons share actual or constructive possession of a thing, possession is joint. Mere presence in the vicinity of a piece of property or mere knowledge of its physical location does not constitute possession.

You may find that the requirements for possession of property are satisfied only if you find that the government has proven beyond a reasonable doubt that the defendant had actual or constructive possession of the property, either alone or jointly with others.

that when he returned he showed appellant and Lucas the weapon. At the time the trio subsequently headed into the District of Columbia, appellant knew Bolling had the weapon on his hip. Upon being asked whether Brown and Lucas were aware of what he was doing when he placed the gun behind and between the bucket seats as police pulled the Honda over, Bolling testified that "I'm pretty sure they was." On these facts, a reasonable juror could find that appellant was aware both that Bolling possessed a gun throughout the evening and that he placed it under the seat as the police pulled the automobile to the curb. Although Brown and Lucas denied that Bolling ever showed them the pistol, resolution of this fact issue was properly left to the jury which, in returning its verdict against appellant and Lucas, discredited their version of events in favor of that presented by Bolling.

Once it is shown that an accused knew of the weapon's presence, the inquiry proceeds to the second phase of the constructive possession analysis. Here the government must "prove that appellant had control of the revolver, *i.e.*, that the weapon was 'in such proximity to ... [appellant] as to be convenient of access and within reach.'" *Porter v. United States*, 282 A.2d 559, 560 (D.C.1971) (citations omitted). We have frequently articulated the importance of the factor of convenient access or ready accessibility as a basis for inferring dominion and control. "Evidence of proximity is sufficient to permit the jury to infer that appellants had convenient access and thus 'dominion and control' over the gun[ ]." *Logan, supra*, 489 A.2d at 491.[3]

Accordingly, we turn to the question of whether in the instant case the "evidence of proximity was enough to permit the jury to infer convenient access." *Johnson, supra*, 309 A.2d at 499. Appellant, Bolling,

---

**3.** In *Curry v. United States*, 520 A.2d 255 (D.C. 1987), this court stated that

> mere proximity to an illegal item does not of itself prove knowledge coupled with dominion or control (citations omitted). While an accused's mere presence at the scene of the crime, proximity to the contraband, or association with one who is in possession *do not in themselves support a finding of constructive possession,* that presence, proximity or association may establish a prima facie case of constructive possession *if it is colored by evidence linking the accused to an ongoing criminal operation of which that possession is a part.*

*Id.* at 263 (emphasis supplied). *Curry,* which was decided after *Logan* but did not cite or attempt to distinguish *Logan,* could be read as adding a new dimension to a constructive possession analysis since it seemingly requires the government to prove that the defendant "exercised a right to dominion or control over the loaded weapon—that [he] had some appreciable ability to guide its destiny." *Id.* at 264. We believe, however, that several striking differences between *Logan* and *Curry* allow the holdings of those two opinions to coexist in harmony. First, and most notably, *Curry* dealt with constructive possession of a pistol found in an apartment, "amongst women's clothing in a nightstand in the bedroom." *Id.* at 260. The court noted that "[i]n cases where the accused is a resident of premises to which others have access, courts will not normally impute possession of an illegal item without proof that the accused is actually involved in some criminal enterprise of which the contraband is a part."

*Id.* at 264. It is reasonable to expect the law to require a somewhat higher degree of proof where an apartment visitor is alleged to have possessed contraband located somewhere within the large space of an apartment, as opposed to that required for an automobile occupant who knows a pistol is within easy reach under or behind the seat. In addition, the broad language in *Curry* bears upon *both* phases of the constructive possession analysis, "knowledge coupled with dominion or control," *id.* at 262, while in *Logan* knowledge was established independently from proximity, thus making proximity operative *only* for purposes of establishing access and control. Further, *Curry's* use of the language, "exercised a right to dominion and control" is explained by the appositive language that follows immediately "... that [he] had some appreciable ability to guide its destiny." *Id.* at 264. This is consistent with the reasoning in *Logan* and its predecessor cases. Finally, in *Curry* this court reversed convictions expressly on the basis of the knowledge prong of the constructive possession analysis, concluding that a reasonable mind could not fairly conclude that any of the appellants "knew of the existence" or location of the weapon. *Id.* at 264–65.

We note, lastly, that even if we were to apply *Curry's* constructive possession language to the instant facts, we have no difficulty concluding on these facts that appellant's constructive possession of the pistol was "colored by evidence linking the accused to an ongoing criminal operation of which that possession is a part." *Curry, supra,* 520 A.2d at 263. *See infra* at 397.

and Lucas met in Maryland, and Bolling showed a pistol to the other two. They then set out together on the ongoing venture that took them to Georgetown. There they went walking through dark streets, Bolling having the gun on his hip and the other two men having knowledge of its presence there. Later, before the police succeeded in pulling the car over to the side of the road, Bolling leaned down, placing the pistol on the floor of the automobile. "Presented to the [jury] for determination, therefore, was an issue of fact whether the revolver lying under the [driver] side of the front seat was within convenient access and reach of appellant so that he might be found to have control under the statute." *Porter, supra,* 282 A.2d at 560 (upholding conviction for carrying a pistol without a license, D.C.Code § 22–3204, where weapon found under passenger side of front seat of automobile).

We are persuaded that on the facts before us, a jury could reasonably conclude that, during the period of time between Bolling's reaching down and the men's

leaving the car at the officer's instructions, the pistol was in easy access of appellant. All appellant had to do was reach down around behind him and snatch the gun as the car slowed down and stopped or as the officers approached the vehicle.[4] This fact is of special importance because "[d]ominion or control over an object is shown when the accused has some appreciable *ability* to guide its destiny[.]" *Curry, supra,* 520 A.2d at 263 (emphasis supplied). It makes little difference that this particular period of easy access can be viewed as lasting only briefly, for this court has never measured constructive possession in terms of temporal duration. We decline to do so now, and for good reason. Whether a defendant was in constructive possession of a weapon—i.e., whether that weapon was easily accessible to him—is fundamentally a fact question for the jury, and can be decided only in the context of all the facts and circumstances of a particular case, including those that relate to time. *See, e.g., Johnson, supra,* 309 A.2d at 499 ("the question of accessibility [is] for the jury").[5]

---

4. With regard to § 22–3204, it should be noted that

> [w]hen Congress promulgated this and related enactments, it confronted menacing statistics which reflected substantial injury and loss of life attributable to the unlawful use of firearms in the District of Columbia. In an effort to curtail the flow of arms on the public streets, and thereby reduce the number of resultant injuries and deaths, the law was enacted.

*Billinger v. United States,* 425 A.2d 1304, 1305 (D.C.1981).

5. Furthermore, this is exactly what appellant's attorney argued to the jury:

> Ladies and gentlemen, you of course are going to be the deciders of the facts. If you decide that Mr. Brown did not have the gun concealed on his person or openly possessed on his person—as of course you will—and if you decide that he did not have it within convenient access and within his reach, then you must find Mr. Brown not guilty.
>
> \* \* \* \* \* \*
>
> Now let me ask you this. You might say that he was in the car with that gun even when it was in the hip. Conceded it was in the hip of Mr. Bolling. Couldn't Mr. Brown have pulled Mr. Bolling over and couldn't he have taken that gun out of his hip, and he could have gotten it that way?

> Is that convenient access? Is that within reach? Is that where he can get his hands on it?
>
> \* \* \* \* \* \*
>
> Now, if Mr. Bolling slid that gun underneath the driver's seat, he stated that it was a very short time because he knew that the police were coming and he wanted to get rid of the gun and it went underneath the seat, and he said that it was loosened at that time.
>
> Now, is that convenient? Is that accessible? Is that within reach of Mr. Brown in the darkened car?
>
> I submit to you that you are going to make that decision, but that is not within convenient access.
>
> Supposing that Mr. Bolling had thrown the car [sic] out of the window, and a passerby had caught it in his hands. Would he have possession? Would he have convenient access to that gun?
>
> Mr. Bolling was just getting rid of it. What we would have to assume is that Mr. Brown knew that Mr. Bolling was getting rid of that gun and he could reach right over and grab that gun and he had access to it because it was a darkened car and he knew exactly what was happening.
>
> *I submit to you that is not what convenient access means. You will decide that. You will make that decision.* But I submit to you that there are enough doubts and enough reasonable doubts that you may have on the basis of

Thus, although the ingredients of constructive possession are well known, we decline to state a definitive recipe for their application. Rather, we simply hold that on the facts of this case a jury properly could have concluded that, within the confines of the automobile in question, the weapon was conveniently accessible to appellant—"in such proximity to ... [him] as to be convenient of access and within reach." *Waterstaat v. United States,* 252 A.2d 507, 509 (D.C.1969) (quoting *Brown v. United States,* 58 App.D.C. 311, 30 F.2d 474 (1929)); *Wilson v. United States,* 91 U.S. App.D.C. 135, 198 F.2d 299 (1952).

We also note that the evidence adduced at trial did not require that the jury begin its constructive possession analysis from the point where the officers pulled appellant's car over to the curb. The instant facts support a reasonable inference that the three men were in joint constructive possession of the pistol from the time they left Maryland and headed into the District: that, from the start, the men intended to act jointly, in an ongoing venture centering around possession of the pistol. Appellant could have distanced himself from Bolling either in Maryland or at any one of a number of points throughout the evening. He did not. Rather, in full knowledge that Bolling was carrying the pistol, appellant knowingly and voluntarily continued his association with him.[6] Such a theory of joint constructive possession is similar to that presented in *Logan, supra,* 489 A.2d 485

(D.C.1985). In *Logan,* this court upheld on a theory of constructive possession the convictions of three defendants for carrying a pistol without a license after their vehicle, which police officers were chasing, pulled over and slowed down as the passenger door opened and an object, later identified as a gun, was thrown from the car shortly before it stopped. *Id.* at 487–88. In *Logan,* the court took note of the fact that "appellants acted in concert" regarding their own actions and the gun, *id.* at 492, just as appellant, Lucas, and Bolling acted in concert by heading into the District and then moving about together late at night through dark streets, all knowing that one of their number carried the pistol.

Thus, in our view, these "[c]ircumstances indicating a concert of illegal action obviously tend to dispel the natural fear that the doctrine of constructive possession is casting too wide a net." *Curry, supra,* 520 A.2d at 264. This is consistent with this court's disinclination to

> announce a per se rule under § 22–3204, deeming all passengers in a motor vehicle to be carrying a pistol which only one of them has been seen to possess or control.... [Therefore, t]o support a conviction for carrying a pistol without a license, the record must show some facts manifesting possession, or at least convenient access.

*Jackson v. United States,* 395 A.2d 99, 104 (D.C.1978) (emphasis in original).[7]

---

the evidence that is in your possession now such that you may say that the government has not carried its burden of proving beyond a reasonable doubt that Mr. Brown is guilty of carrying a pistol without a license. (Emphasis supplied.)

6. The prosecutor advanced such a theory of constructive possession in his closing argument to the jury, asserting that

[i]n this case we have a very small gun. One of them is going to put it on. All of them knew that it was there. As long as all of them knew it was there, and as long as all of them had the intention of being around that gun, as long as none of them made an effort to get away from that gun, with that knowledge Mr. Lucas and Mr. Brown are as guilty of possessing that gun as Mr. Bolling.

7. The court in *Jackson* reversed a conviction for carrying a pistol without a license because "we

cannot say that a jury could find that appellants jointly possessed the unlicensed pistol." *Jackson, supra,* 395 A.2d at 104. However, in *Jackson,* unlike in the instant case, the gun was found "in the street approximately 30 to 50 feet behind" the car appellant had been riding in, *id.* at 102, and absent other evidence this fact, in the court's view, could not support a finding of "at least convenient access." *Id.* at 104. *See Outzs v. United States,* 306 A.2d 664, 665–66 (D.C.1973) (accused not in control of weapon found on public street near where he had been standing). Similarly, in *Hill, supra,* 264 A.2d 145 (D.C.1970), this court reversed a constructive possession conviction of an accused where the only evidence was his possession of the car registration and his presence at the scene of the arrest of the car's occupant, a pistol having been found under the seat. The *Hill* court held that "[t]he fact that appellant *had access* to the vehicle and might have driven it could not justify

Employing this standard, our court has upheld on a theory of constructive possession a conviction for carrying a pistol without a license where

the government produced one witness who said that he found the gun in the car and the gun was under the exclusive control of no single individual. The witness said that the car in which the gun was found was occupied by appellant ..., and that [appellant] was sitting in the passenger seat next to the gun.

*Hamilton, supra,* 395 A.2d at 28. Furthermore, a review of the cases in which this court has dealt with guns found in passenger cars establishes that we uphold convictions for carrying a pistol without a license on a theory of constructive possession given fact situations substantially similar to the one before us now.

In *Waterstaat, supra,* this court upheld the conviction of a defendant driver after police became suspicious and pulled over a car. As police approached the stopped vehicle, they noticed the passenger " 'started fooling around with his left hand.' " 252 A.2d at 508. The officer looked into the vehicle and saw a pistol lying on the front seat next to the driver. At trial, the driver denied knowledge of the pistol, and his passenger testified that the pistol had been his. The driver contended that the pistol had fallen out of his passenger's pocket as the passenger alighted from the car in response to the officer's command, *id.,* and therefore he could never have had access to it. *Id.* at 509. In upholding the driver's conviction, this court noted that the government was required to prove only that the pistol " 'was in such proximity to ... [the driver] as to be convenient of access and within reach.' " *Id.* at 509 (quoting *Brown, supra,* 58 App.D.C. 311, 30 F.2d 474). The court reasoned that the trier of fact

was presented for determination an issue of fact whether the pistol had been lying on the front seat next to appellant within convenient access and reach of appellant so that he might be found to have had

possession under the statute or whether the pistol fell out of the pocket of appellant's passenger and the police intervened before appellant could possibly have had access to it.

*Id.* at 509. Thus, this court recognized in *Waterstaat* that the requirements for submission to the jury on "possession under the statute" could be met simply where the pistol was "within convenient access and reach[.]" *Id.*i

Similarly, in *Tucker, supra,* this court upheld the appellant's conviction for carrying a pistol without a license after police observed a pistol lying in plain view partially under an armrest on the front seat of a vehicle containing three men and next to the place where the appellant had been seated before he alighted from the car. In affirming the conviction on the theory of constructive possession, *i.e.,* "that the pistol was conveniently accessible to appellant and that he knew of its presence," 421 A.2d at 35, this court stated that

the government presented evidence establishing that the weapon in question was lying in plain view partially under the armrest on the front seat of the automobile next to where [the appellant] had been seated just moments before. We conclude that such evidence of proximity was sufficient to permit the jury to infer convenient access, and that the location of the weapon in plain view was sufficient to permit the jury to infer that appellant knew of its presence.

*Id.* "In light of the above," we affirmed because "we will not reverse a conviction on the facts as long as there is evidence which reasonably permits a finding of guilt[.]" *Id.*

Earlier, in *Jones, supra,* this court had upheld a constructive possession conviction after concluding that the gun's location on a console between the front seats of a car "sufficiently demonstrated it to be 'in such proximity ... to be convenient of access

---

an inference of control over all the items therein," *id.* at 147 (emphasis in original), but noted, significantly, that "[h]ad appellant been present in the automobile when arrested then the cir-

cumstances may well have supported a finding that he knew the gun and ammunition were in the car and he had possession of them." *Id.* at 146.

and *within reach'*" of appellant. 299 A.2d at 539 (footnote omitted).

Similarly, in *Johnson, supra,* this court upheld a constructive possession conviction where "appellant was a passenger in the rear seat of the car, and ... two pistols were found under the passenger side of the front seat." The *Johnson* court reasoned that "[s]uch evidence of proximity was enough to permit the jury to infer convenient access[,]" 309 A.2d at 499, and "'we will not reverse a conviction on the facts as long as there is evidence which reasonably permits a finding of guilt.'" *Id.* (citations omitted).

In *Holley v. United States,* 286 A.2d 222 (D.C.1972), this court upheld a conviction based on constructive possession where the appellant was seated in a car's front passenger seat and the gun was located on the back seat next to another passenger. The *Holley* court concluded that the gun was in such proximity to the accused as to be convenient of access and within reach, reasoning that although "the accused was in the right front seat of the car and the protruding pistol was lying on the opposite side of the rear seat ... when [the accused] leaned over toward the back seat the gun was within her reach." *Id.* at 223.

Finally, we observe that in *Kenhan v. United States,* 263 A.2d 253 (D.C.1970), we held the evidence sufficient to support a finding of constructive possession in circumstances far less compelling than those present here. There, an officer pulled over a car in which appellant was the passenger, and the driver agreed to accompany the

officer back to the precinct house. Once there, appellant got out and the officer observed "a pistol sticking out from between the back rest and seat to the left of where [the passenger] had been sitting." 263 A.2d at 254. Although the passenger testified that "he had just entered the automobile moments before they were stopped ... and that he was totally unaware of [the gun's] presence[,]" this court upheld his conviction since the trier of fact had determined "that he had the requisite knowledge and control of the weapon." *Id.*

As the foregoing discussion demonstrates, a substantial and longstanding body of precedent supports our conclusion that appellant's conviction must not be disturbed.[8] We therefore hold that the trial court did not err either in refusing to suppress certain physical evidence obtained during the investigatory stop, or in denying appellant's motion for judgment of acquittal on the charge of carrying a pistol without a license.

*Affirmed.*

MACK, Associate Judge, dissenting in part:

Although the majority embellishes, with innocuous details (*i.e.,* dimly lit street, etc.), the trial court's finding that the police officers' stop of appellant and his companions was permissible under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), I can accept the finding.

I most emphatically disagree, however, with the majority's ruling that appellant

8. We reject the two additional arguments appellant advances in seeking reversal. First, appellant argues that the trial court erred in denying his motion to sever his trial from that of his codefendant because the jury might infer his guilt from facts and circumstances relating to the contents of Lucas' trunk (the BB and pellet guns). We disagree. A strong presumption exists in favor of joint trials for two or more defendants charged with offenses arising from the same criminal transaction. *Jennings v. United States,* 431 A.2d 552, 556 (D.C.1981), *cert. denied,* 457 U.S. 1135, 102 S.Ct. 2964, 73 L.Ed.2d 1353 (1982). A trial judge may order severance where it appears that a defendant or the government will suffer prejudice by a joint trial. D.C. Code § 23–313 (1981); Super.Ct.Crim.R. 14.

The trial court, in exercising its discretion to sever, "must weigh prejudice to the defendant caused by the joinder against the obviously important considerations of economy and expedition in judicial administration." *Carpenter v. United States,* 430 A.2d 496, 502 (D.C.1981) (en banc), *cert. denied,* 454 U.S. 852, 102 S.Ct. 295, 70 L.Ed.2d 143 (1981) (citation omitted). Applying these standards, we find no abuse of discretion in the trial court's denial of appellant's motion to sever.

Second, there is no merit to appellant's contention that D.C.Code § 22–3204 (1981) is unconstitutional. *Sandidge v. United States,* 520 A.2d 1057 (D.C.), *cert. denied,* — U.S. —, 108 S.Ct. 193, 98 L.Ed.2d 145 (1987).

was properly convicted of carrying a pistol without a license. Accepting as true the testimony of the government's witness, Bolling, that appellant and the codefendant Lucas knew that Bolling was carrying a gun on his hip (disputed by appellant and Lucas), I do not think there was sufficient evidence of constructive possession to go to the jury. How can one reason that a loaded gun is "conveniently accessible" to a person charged with carrying the gun when that gun is in fact carried on another person's hip? How can one reason that the first person has "dominion and control" over that gun either while the other person carries that gun or when the other person, during the minute of police apprehension, attempts to discard the gun? What was the proof of appellant's involvement in the "concert of illegal activity?" Indeed what "concert of illegal activity" was there? In my view, a reasonable juror could not conclude guilt "without crossing the bounds of permissible inference and entering the forbidden territory of conjecture and speculation." *Curry v. United States*, 520 A.2d 255, 266 (D.C.1987). The majority has allowed the doctrine of constructive possession "to cast too wide a net." *Id.* at 264.