**Keith T. THOMAS, Jr., Appellant,**

v.

**UNITED STATES, Appellee.**

No. 99–CF–1277.

District of Columbia Court of Appeals.

Argued April 17, 2002.
Decided Sept. 12, 2002.

§ 22–3204(a)[2] ("CPWL"); (2) possession of an unregistered firearm, in violation of D.C.Code § 6–2311(a);[3] and (3) unlawful possession of ammunition, in violation of D.C.Code § 6–2361(3).[4] On appeal, Mr. Thomas contends that the trial court erred in its response to a jury note requesting clarification of a constructive possession jury instruction because the judge implicitly told the jury it could consider a theory of joint constructive possession that was not supported by legally sufficient evidence.[5] We agree, and hold that the error was sufficiently prejudicial to require reversal.

Thomas D. Engle, with whom Sharon L. Burka and Quinn O'Connell, Jr., Washington, DC, were on the brief, for appellant.

Mary Pipitone, Assistant United States Attorney, with Kenneth L. Wainstein, United States Attorney at the time the brief was filed, and John R. Fisher, Thomas J. Tourish Jr., and John G. Interante, Assistant United States Attorneys, were on the brief, for appellee.

Before SCHWELB, FARRELL and REID, Associate Judges.

REID, Associate Judge:

After a jury trial, appellant Keith Thomas was convicted[1] of: (1) carrying a pistol without a license, in violation of D.C.Code

## FACTUAL SUMMARY

The record on appeal shows that on August 6, 1997, around 3:20 a.m., Metropolitan Police Department Officers Dexter Martin and Lawrence Walker, were assigned to a plain clothes unmarked unit. Officer Martin testified that he was seated in the front passenger side of an unmarked car, and Officer Walker was driving at a very low speed in the Barry Farms area of Stevens Road, Southeast. Officer Martin had patrolled that area for eleven and one-half years. The officers "were flagged down by a subject," later identified as Anton Parker, who "gave [them] the signal" by "put[ting] his two fingers up and ... his hands [in a particular position]."[6] Also present on the scene were Mr. Thom-

---

1. Mr. Thomas was convicted at his second jury trial. At Mr. Thomas' first trial, the jury could not reach a verdict as to the three gun charges. The trial court also granted Mr. Thomas' motion for judgment of acquittal as to a possession of cocaine charge.

2. Recodified as D.C.Code § 22–4504 (2001).

3. Recodified as D.C.Code § 7–2502.01 (2001).

4. Recodified as D.C.Code § 7–2506.01 (2001).

5. Mr. Thomas also claims that the trial court violated his Sixth Amendment constitutional

right to a unanimous jury verdict by not giving a unanimity instruction after answering the jury's question regarding joint constructive possession. As we agree with Mr. Thomas' first claim, we need not reach this issue.

6. Defense counsel objected that Officer Martin was about "to testify [that] this is kind of a drug related signal...." He objected to any such testimony. The trial judge concluded that the reference should only be to "a signal" and not a "drug-related signal."

as, and two other men located five to ten feet behind Mr. Thomas.

When Mr. Parker saw Officer Martin, "he gritted his teeth and he said 'Oh sh-t, that's Dex'[,] looking over his right shoulder."[7] Mr. Parker also "threw ... down ... an unknown small object."[8] Officer Martin watched "Mr. Thomas immediately thr[o]w from his right hand a silver metal object to the ground, directly to the ground." The object turned out to be a gun.

Officers Martin and Walker got out of the unmarked car, and moved in the direction of the four men. Simultaneously, Mr. Parker walked over to Officer Martin, shook his hand, and asked: "Hey, what's up Dex?" Officer Martin saw a handgun on "the right side of [Mr. Parker's] pants." All four men were directed to get behind the unmarked vehicle "and place their hands behind their heads." Mr. Thomas and Mr. Parker were arrested.

In his closing argument at trial, defense counsel emphasized that: "There were three people out there that could have disposed of that gun, discarded that gun besides Mr. Thomas.... We certainly have evidence about Mr. Parker discarding something from his hand but that was never found according to Officer Walker. What was it?" The prosecutor's rebuttal recognized that, "Mr. Parker may have thrown something on the ground, ..." but stressed that there was no gun in his hand.

The trial judge's final instructions to the jury included an explanation of both actual and constructive possession. After deliberating for a time, the jury sent a note to the judge raising questions about the "definition of possession, actual and constructive." The note also read:

[I]f the actual thing that was witnessed is described as an object and later determined to be a gun, then does that object then become a gun in the actual—underlying actual sense or a constructive sense? Can more than one person have constructive possession?

Following discussion of the note with defense counsel and the prosecutor, the trial judge told the jury that he could repeat his instructions regarding actual and constructive possession. With respect to the portion of the note quoted above, the trial judge informed the jury:

I really can't answer the question for you ..., because if I did I would be finding the facts for you. And I can't do that. You have to make your own determinations with respect to these facts and I can't provide any information to you with respect to that question.

The final question ask[s]: Can more than one person have constructive possession of a thing? And the answer to that question is yes.

## ANALYSIS

■ Mr. Thomas contends that his conviction should be reversed because there is an impermissible risk that the jury's verdict was grounded in an erroneous legal theory. He points to the trial court's response to the jury's note asking whether, legally, constructive possession could be joint, when the evidence was insufficient as a matter of law to support conviction on a theory that Mr. Thomas constructively possessed a gun in the actual possession of Mr. Parker or someone else. We agree

7. Officer Martin's nickname is "Dex."

8. During his testimony, Officer Walker declared: "Once we pulled up into the area I observed Mr. Thomas go into his right pocket, a quick motion, and throw the [silver colored] object to the ground."

that the trial court's supplemental instruction may have encouraged Mr. Thomas's conviction on a theory unsupported by the evidence, and that in these circumstances he must be given a new trial.

To establish constructive possession it is not sufficient for the prosecution to show that appellants were within reach of the [contraband]; mere proximity to an illegal item is not enough. Rather, the government must establish that appellants knew of the location of the [contraband] and that they exercised dominion and control over it. Specifically, the prosecution was required to prove that each appellant knowingly had both the power and the intention at a given time to exercise dominion or control over the [contraband].

*Bernard v. United States,* 575 A.2d 1191, 1195 (D.C.1990) (internal citations omitted).

In this case, the government did not prove that both Mr. Thomas and Mr. Parker "knowingly had ... power and intention to exercise dominion or control" over the gun and ammunition because it did not present this theory at trial. Instead, it set forth a sole constructive possession or actual possession theory. Indeed, the government presented no evidence supporting the joint constructive possession theory. There was no evidence indicating how long Mr. Thomas and Mr. Parker were together before the police arrived or what they had been doing. *See Logan v. United States,* 489 A.2d 485, 492 (D.C.1985) (finding joint constructive possession where gun was thrown from passenger side of car after the car slowed down). Significantly, the facts of this case contain none of the requisite "circumstances indicating a concert of illegal action [that] obviously tend[s] to dispel the natural fear that the doctrine of constructive possession is casting too wide a net." *Brown v. United States,* 546 A.2d 390, 397 (D.C.1987) (quoting *Curry v. United States,* 520 A.2d 255, 264 (D.C. 1987)). *See also Rivas v. United States,* 783 A.2d 125 (D.C.2001) (en banc).

■ The jury's question, concerning whether "more than one person [can] have constructive possession of a thing," together with the judge's answer, contained an implicit assumption that Mr. Thomas could be convicted if Mr. Parker, or one of the others, threw down the gun. This assumption is entirely unsupported by the evidence. *See Curry, supra* (noting "any legitimate inference which can be drawn from [ ] presence, proximity, or association is considerably weakened where the accused is one of several people gathered in the place where contraband is found.").

■ At oral argument, the government maintained that under *Griffin v. United States,* 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991), we should affirm Mr. Thomas' conviction, regardless of whether there was sufficient evidence to support joint possession, because the evidence demonstrated that he personally possessed the gun. Indeed, Officer Martin saw him throw a silver metal object to the ground, and the jury reasonably could infer that the object was the handgun later found on the ground. In *Griffin,* the Supreme Court held that "when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive ... the verdict stands if the evidence is sufficient with respect to any one of the acts charged." *Id.* at 56, 112 S.Ct. 466. Mr. Thomas contends, however, that the trial judge made a legal error in responding to the jury's note and that a conviction cannot stand where it is based upon "a

mistake about the *law*, as opposed to a mistake concerning the weight or the factual import of the evidence." *Id.* at 58, 112 S.Ct. 466 (emphasis added).[9] Where it appears that a conviction is based upon an improper rule of law, the verdict must be set aside. *Id.* at 52, 112 S.Ct. 466 (quoting *Yates v. United States*, 354 U.S. 298, 312, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957), *overruled on other grounds, Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978)).

This case differs from *Griffin* because the jury's note to the trial court suggested that it was considering a verdict based on joint constructive possession, and the court's response did not disabuse them of the availability of that theory on the facts of this case. To ignore the significance of the jury's request for clarification—and the trial court's answer—would be the practical equivalent of establishing an absolute rule presuming that general verdicts are legally valid, even in the face of evidence that the conviction was based upon an "erroneous interpretation of law." *Griffin, supra.* We would then repeat the trial court's error: ignoring the likelihood of the jury convicting Mr. Thomas on a theory unsupported by evidence.

The Sixth Circuit reached a similar conclusion in a case where the jury was permitted to convict the defendant of having conspired to commit any one of three predicate crimes. As to one of these crimes, structuring bank transactions to void reporting requirements, the jury was erroneously instructed that the defendants did not have to know the structuring was unlawful, contrary to an intervening Supreme Court decision. In reversing the conspiracy conviction, the court of appeals rejected the government's reliance on *Griffin*, stating:

> In the present case, the court gave an instruction that was legally incorrect. The jury had no way of determining that the instruction misstated the law in defining the elements of one of the offenses the defendants were charged with conspiring to commit. Unlike a case where the possibility of error by the jury consists of considering a conviction on insufficient evidence as in [*Turner v. United States*, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970)] and [*Griffin, supra*], here the possibility of error consisted of the jury following an erroneous instruction of the law.

*United States v. Palazzolo*, 71 F.3d 1233, 1238 (6th Cir.1995).

Similarly, we cannot assume that the jury is aware of what "theory of conviction submitted to them is contrary to the law." *Griffin, supra.* The judge's response to the jury's inquiry left the jury to assume that joint constructive possession was a proper theory under which to convict. We must therefore conclude that the judge's instruction constituted "legal error," and accordingly Mr. Thomas's conviction must

---

9. The Supreme Court stated:

   Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law—whether, for example, the action in question is protected by the Constitution, is time barred, or fails to come within the statutory definition of the crime. When, therefore, jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error. Quite the opposite is true, however, when they have been left the option of relying upon a factually inadequate theory, since jurors *are* well equipped to analyze the evidence, *see Duncan v. Louisiana*, 391 U.S. 145, 147, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).

   *Griffin, supra* (emphasis in original).

be reversed.[10]

*So ordered.*

---

**10.** Under *Yates, supra,* we need not conduct a harmlessness analysis under *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Where it cannot be determined whether the conviction rests on legally invalid grounds, "it is impossible to say that the error in submitting the legally inadequate ground to the jury was harmless beyond a reasonable doubt." *United States v. Hastings,* 134 F.3d 235, 242 (4th Cir.1998); *see also Yates, supra,* 354 U.S. at 312, 77 S.Ct. 1064 (citations omitted).